**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____x

**WENDY TRUDO,**

               Plaintiff             **DOCKET NO. 25-CV-01345 (HG) (LKE)**

       -against-

                                   **AMENDED COMPLAINT**
                                   _Jury Trial Demanded_

**THE DEPARTMENT OF EDUCATION**
**OF THE CITY OF NEW YORK, MELISSA**
**AVILES-RAMOS, Chancellor; and KATHERINE**
**RODI, Director of Employee**
**Relations,**

               Defendants
_____x

**PLAINTIFF WENDY TRUDO,** ("Plaintiff") proceeding Pro Se, as and for her Amended

Complaint filed against the Defendants the **DEPARTMENT OF EDUCATION OF THE**

**CITY OF NEW YORK, MELISSA AVILES-RAMOS,  and KATHERINE RODI,**

(henceforth "Defendants"), sued in their official capacities as Chancellor and Director of

Employee Relations, respectively, alleges upon knowledge as to her own facts and upon

information and belief as to all other matters:

### JURISDICTION AND VENUE

1. This is a civil action seeking  injunctive relief, monetary relief, including past and on-
   going economic loss, compensatory and equitable damages for the deprivation of
   Constitutionally protected procedural and substantive due process rights pursuant to 42
   U.S.C. Section 1983, 1st,  5th and 14th Amendments to the United States Constitution, 42
   U.S. Code § 2000e et seq., New York State Human Rights Law (NYSHRL), NY Executive
   Law §296 et seq., and New York City Human Rights Law (NYCHRL), NYC

1

Administrative Code Title 8, and New York City Civil Service Laws 75-b and 77.

Plaintiff further brings this action against Defendant Katherine Rodi to redress the

deprivation of Plaintiff's rights, privileges and immunities secured by the Fourteenth

Amendment of the United States Constitution, pursuant to the Civil Rights Act of 1871

(as amended), 42 U.S.C.§ 1983.

2.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343 for

claims arising federal questions under 42 U.S.C. §1983, in particular the protections given

by the Free Exercise Clause, Equal Protection Clause, First, Fifth, and Fourteenth

Amendments to the Constitution, as well as State law claims codified in the New York

State Constitution and Civil Service Laws protecting procedural and substantive due

process rights.

3.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

4.  Defendants were at all times acting under color of law in breaching their covenant of good

will and fair dealing with the Plaintiff.

5.  This action's venue properly lies in the United States District Court for the Eastern

District of New York, pursuant to 28 U.S.C. § 1391, because this is the district in which a

substantial part of the events giving rise to the Plaintiff's claims occurred.

6.  This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and

2202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.  Plaintiff submitted her religious accommodation requests and appeals in a timely fashion

yet she was never given any dialogue on what accommodation could be offered or reasons

for the deprivation of her Constitutional rights.

8. Plaintiff was denied her due process pursuant to the City, State, and Constitutional Law.

**PARTIES**

9. Plaintiff WENDY TRUDO started working for the Department of Education in March 2006 as an Occupational Therapist. She had an impeccable reputation and record. At all relevant times, Plaintiff was a public employee of the DOE within the meaning of an "employee" as defined in NYSCHRL and NYCHRL and New York State Civil Service Laws § 75, 77.

10. Defendant The Department of Education of the City of New York "NYC DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and has at all times relevant to this case been a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, and First and Fourteenth Amendments to the Constitution which prohibits any diminution of due process rights without Just cause and any retaliatory discrimination against individuals, such as Plaintiff herein.

11. Defendants have pursued the discriminatory actions under color of law by denying Plaintiff a reasonable accommodation that would not cause Defendants undue hardship.

12. Defendant Chancellor Melissa Aviles-Ramos was in her official capacity of Chancellor for the Department of Education of the City of New York ("NYC DOE") at all times relevant in the Amended Complaint.

13. Defendant Katherine Rodi was and is employed by the Department of Education of the City of New York ("NYC DOE") and started work as the Director of Employee Relations in 2012. She also has the responsibility of overseeing the DOE's Office of Safety and Health and the Office of Personnel Investigations, where she decides who among the DOE's employees are

placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee. She is the final decision-maker on who gets a Code on their fingerprints. The database is shared with the FBI and the Criminal Justice System. This Code is a permanent, public stigma on Plaintiff's employment. Additionally, Ms. Rodi was a member of a "General Committee" for the NYC DOE in 2021, and she denied all requests for religious accommodations from employees although she never reviewed any of the requests. Ms. Rodi is sued in her official capacity as Director of Employee Relations.

14. At all times herein mentioned, Defendants employed no fewer than fifteen (15) persons.

## STATEMENT OF FACTS IN THIS CASE

15. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).

16.  Plaintiff, a stellar employee without any disciplinary issues, started work as an Occupational Therapist at the Department of Education in March 2006.

17. On March 12, 2020 Mayor Bill de Blasio issued an Emergency Executive Order  declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents. Defendant DOE closed all schools within their jurisdiction in New

York City in response to this threat. Plaintiff remained working remotely and in her school building, a hybrid plan, until September 2021 when the DOE re-opened almost all schools and ordered her back into her school to work.

18. Defendants' Citywide hoax to remove senior City workers from payroll had begun. In 2021-2022 Defendants made false claims about the vaccine, the COVID virus, and compliance, in order to retaliate and discriminate against Plaintiff and similarly situated educators chosen randomly in order to remove expensive senior employees such as Plaintiff from the City payroll.

19. One such false claim was that the COVID Vaccine Mandate ("CVM") was generally applicable and neutral, thus Plaintiff's arguments against it were invalid. First, Plaintiff's argument here is not against the CVM, but the way in which it was *applied.* Second, the CVM was not generally applicable nor neutral in it's implementation. The CVM was a political weapon, used to cull high salaried employees from the City budget that was reduced during the COVID shutdown.

20. On September 10, 2021, Martin Scheinman, a well-known Arbitrator, issued an Opinion which was sent to all NYC DOE employees that was discriminatory, favoring Christian Scientists and Jehovah's witnesses, and ordering any other employee not members of either these two groups to get vaccinated or be fired. Thus, Defendants clearly engaged in widespread religious discrimination in implementing its vaccine mandates by discarding due process rights outright for Plaintiff and *not* all others similarly situated, and adopting a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion. See **EXHIBIT 1.**

21. The Scheinman Award was the direct cause of Plaintiff's placement on a leave without pay

"LWOP" and her termination. Scheinman's LWOP was created out of whole cloth. This lawless statement ordered all NYC DOE employees to get vaccinated by October 1, 2021, submit a valid vaccination card to the Solas online database by October 4, 2021, or be removed from salary immediately. This alleged "policy" was punitive, against public policy, Civil Service Law, and protected Constitutional rights. LWOP and fake news about the COVID virus and the so-called "lethal" vaccine served as a ruse to fire as many municipal workers as possible without due process. **EXHIBIT 2.**

22. Another false claim made by Defendants was that the DOH Order issued on September 15, 2021 on the details of the COVID Vaccine Mandate ("CVM") changed Plaintiff's terms of employment. This never happened. DOH Order ¶6 states: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law". This clause was placed into the Order solely to silent objectors to Defendants' policy statements in prior DOH Orders that mandated *'termination for all who are unvaccinated'.* Defendants did not intend on complying. (**EXHIBIT 3**)

23. On September 17, 2021, Plaintiff submitted an application for religious exemption accommodation  to her employer the DOE. **EXHIBIT 4** Religious Statement

24. On September 19, 2021, Plaintiff's application for a religious exemption accommodation was denied. She immediately appealed the decision and uploaded additional documentation, and received an appeal hearing for September 24, 2021. **EXHIBIT 5** DENIAL-DOE

25. On September 24, 2021, the Scheinman Arbitration and Mediation Services ("SAMS") appointed Arbitrator, Julie, Torrey, initiated Plaintiff's virtual appeal meeting yet cancelled it due to her uncertainty with the additional documents that were provided on behalf of Plaintiff's appeal and religious exemption rights.

26. On September 25, 2021, Plaintiff received a second invitation for a virtual hearing for her religious exemption appeal to be held on September 26, 2021.

27. On September 26, Plaintiff participated in a very brief virtual appeal with attorney Howard Edelman and an official from the DOE and a UFT representative. She explained how her sincerely held religious beliefs did not permit her to be vaccinated by the vaccine.

28. On September 27, 2021, Plaintiff received notification that her appeal for religious exemption accommodation was not approved. An X was in the box next to "Denied" without any explanation or reason. **EXHIBIT 6**

29. On October 1, 2021, Plaintiff received an email communication informing her that she was officially on a leave of absence without pay (LWOP). She was also told that she was not allowed to enter any school building, could not engage in conversation with parents, unless she received and uploaded proof of vaccination. **Ex. 2**

30. On November 15, 2021, the United States Court of Appeals for the Second Circuit found the religious exemption application and appeal guidelines, for which the grounds of Plaintiff's religious exemption and appeal process was denied, to be "constitutionally unsound". The Court ordered the city to award a fresh consideration to religious application. The Court indicated that such consideration "shall adhere to the standards established by Title V11 of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. The ordered accommodations to be considered for all sincerely held religious observances, practices, and beliefs."

31. On November 28, 2021, The United states Court of Appeals for the Second Circuit merit Panel concluded;

> "It is, of course, true that the citywide panel must abide by the First Amendment by ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings," It also reaffirmed that a fresh consideration of people's request for religious accommodation. In addition to the First Amendment such consideration shall adhere to the standards established by Title Vl 1 of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law." See **EXHIBIT 7**

32. On December 3, 2021, Plaintiff was permitted to reapply for fresh consideration of a religious exemption accommodation for the city wide panel and uploaded additional documents that explained her sincerely held religious beliefs.

33. In January 2022, Plaintiff received a request from the Citywide Appeal Panel that she answer four additional questions regarding her sincerely held religious beliefs, with a deadline to provide the responses by January 14, 2022, before 8:00 PM.

34. The Citywide Panel, a review Panel, did not act in good faith by denying every appeal except for a selected few. Newly released transcripts recorded at depositions of members of the Citywide Panel show that no member reviewed the individual appeals of the denial of religious accommodation/exemption denied by the NYCDOE. Decisions were computer-generated to say "Undue Hardship" or "did not meet criteria".

35. On January 14, 2022, Plaintiff provided detailed responses to each of the questions, to the Citywide Appeal Panel to explain why she could not be vaccinated with the COVID-19 vaccine. **EXHIBIT 8.**

36. On Monday, March 7, 2022, Plaintiff received an email stating that the Citywide Appeal Panel denied her religious exemption accommodation due to *Undue Hardship*. This is the response they provided:

"The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request. The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning." **EXHIBIT 9**

The Citywide Panel violated Plaintiff's religious rights**. EXHIBIT 10**

37. On or about March 20, 2022, Plaintiff received a letter, dated, March 17, 2022, that she was officially terminated from the Department of Education due to non-compliance with the Vaccine Mandate. This was traumatic for Plaintiff, and unlawful. **EXHIBIT 11** Termination.

38. On March 24, 2022, the Mayor issued EMERGENCY EXECUTIVE ORDER 62, https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62 which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This EO showed the discrimination and retaliation of the Defendants and that the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted City Agencies, employees at the Department of Education, and municipal workers.

39. On or about April 28, 2022, Plaintiff became aware of an email communication sent out by Beth Norton from the UFT that indicated any person who applied for a religious exemption from the COVID- I 9 vaccine will be placed on a "problem code" that is associated with her fingerprints with the Human Resources' Office of Personnel Investigations which prevented her from obtaining any employment opportunities in New York City in public or private schools. **EXHIBIT 12** Problem Code documents.

40. This code made her guilty of misconduct for asking for an accommodation for her religious beliefs so that she could continue working while unvaccinated. This Code was disciplinary, thus Plaintiff was supposed to have a hearing on the charges brought against her. As a hearing was not convenient for Defendants, they refused to hold such a hearing. They did not want to know what the details were of Plaintiff's religious beliefs, because then they had to find her an accommodation, which they did not want to do. Defendants also have no justification for placing Plaintiff and other unvaccinated NYC DOE employees on the Problem Code database.

41. In this case, Defendants enlarged the fake information about the so-called "death virus" in order to obtain panic among the public school parents in New York City. Their purpose was malicious: so that "government can restrain individual liberties to the extent it furthers the ends of preventing harm to other citizens …[because] the CVM stopped the COVID-19 virus in its' tracks, NYC would have a compelling interest to mandate everyone living and working there to get vaccinated. Even if the Vaccine resulted in even mild side effects, the benefit to the public would outweigh the risk to the individual."

### AS AND FOR A FIRST CAUSE OF ACTION: SECTION 1983 UNLAWFUL RETALIATION AND DISCRIMINATION WHILE ACTING UNDER COLOR OF LAW IN VIOLATION OF NYSHRL AND NYCHRL

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 41 as if the same were fully set forth at length herein.

43. Defendants' CVM *as applied* to her, forced her into separation from her career, termination, and being harassed by her workplace peers and supervisors. Defendant claim that 160-178 MYC DOE employees were granted accommodations, and were placed in reassignments throughout NYC. Even those granted accommodations were belittled and feared by other in

the NYC DOE: **NYC teachers with vaccine exemptions are being treated like pariahs**

https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

44. Furthermore, to establish the existence of an undue burden, the Defendants must show that accommodating the employee would cause a "significant interference with the safe or efficient operation of the workplace." *See NYC Admin. Code* 8-1 07(3)(b). Moreover, "the determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, *in a cooperative dialogue." See NYC Admin. Code* 8-107 (28)(e) (emphasis added). Here, Defendants never showed that granting Plaintiff's accommodation request would make anyone "unsafe", considering the fact that Plaintiff would agree to testing and masking but was never asked to do either in any cooperative dialogue.

45. Further, a hardship that is attributable to employer animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense.

46. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce Plaintiff to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

47. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether

his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.

48. In the new category of discipline titled "insubordinate unvaccinated employee", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by peers both inside and outside of the workplace.

49. Defendants, by denying Plaintiff any accommodation, denied her a place to continue working which were set up by Defendant called "rubber rooms" or "reassignments".

50. Plaintiff received auto-machine-created denials that had no details about why she was denied, in violation of the rules of City Service and her rights under Civil Service Law Section 75(b):

> "A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information:(i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or(ii)which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation."

Civil Service Law Section 77 says:
> "Pursuant to N.Y. Civil Service Law Section 77, a City employee who is unlawfully removed from his or her position, and who thereafter is restored to such position as a result of court order, is entitled to receive back pay and other benefits. See, e.g., Johnson v. New York City Dep't of Env't Prot., 824 N.Y.S.2d 39 (1st Dep't 2006), aff'd 882 N.E.2d 386 (2008). Section 77 requires compensation for back pay and other losses. See Boylan v. Town of Yorktown, 579 N.Y.S.2d 126, 127 (2d Dep't 1992); Johnson, 824 N.Y.S.2d at 40 (a reinstated City employee is entitled to recover lost overtime "to the extent that those amounts can be documented")."

51. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed, wrongfully terminated, and permanently stigmatized.

52. Based on the foregoing, Defendants under color of law subjected Plaintiff to retaliation and discrimination on the basis of her religion in violation of her Constitutional rights to property, liberty and due process pursuant to 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR FAILURE TO REASONABLY ACCOMMODATE**
**THE PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS**

53. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 51 as if the same were fully set forth at length herein.

54. Plaintiff has sincerely held religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption requests and Appeals based upon an unconstitutional process designed to fool Plaintiff and others into thinking that her appeal was considered, and gave no details or reason for her subsequent termination.

55. Defendants never engaged in a dialogue about Plaintiff's accommodation or exemption, they only played a deadly game saying they reviewed Plaintiff's appeal for a religious accommodation. All responses to Plaintiff's appeal to the Citywide Panel were generated by a computer. This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued in bad faith.

56. This matter shows that Defendants not only did not engage in a dialogue about the accommodations, but punished Plaintiff with a Problem Code for requesting an accommodation.

57. Based on the foregoing, Defendants failed to provide a reasonable accommodation and as a result, discriminated against Plaintiff on the basis of her religious beliefs and unlawfully

discriminated against her in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION:
## VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

58. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 56 as if the same were fully set forth at length herein.

59. Defendants, while acting under the color of law, unlawfully deprived the Plaintiff of her rights to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion, and Plaintiff's constitutionally protected conduct.

60. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

61. In Garvey v City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

62. New York City was the only location in New York State which mandated the vaccine or termination for public employees. As a direct result of Defendants' violation of the Plaintiff's Fifth and Fourteenth Amendment rights of equal protection, Plaintiff has

suffered irreparable harm for which there is no adequate remedy of law.

63. Due to Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

64. The Fourteenth Amendment prohibits any State from denying to "any person within its jurisdiction the equal protection of the laws." 129. NY Const art, I §XI states that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state." 130. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

65. Thus, unvaccinated people in the City were punished only if they worked for the City of New York. The City could not achieve herd immunity even if every City worker were vaccinated. Vaccination is a permanent measure that does not go away at the end of the workday. Still, the named Defendants singled out Plaintiff by terminating her and taking away any accommodation, leaving her harmed and broken.

66. There is absolutely no permissible reason for selectively enforcing the mandate against unvaccinated City workers like Plaintiff irrespective of vaccine efficacy.

67. In addition, the plausibility that Defendants were motivated by impermissible considerations or malicious intent skyrockets considering that the Vaccine—as alleged herein—does not stop the transmission of the Virus. Defendants' carve outs supports the inference that they knew it did not work. Defendants acted in violation of clearly established federal law. The CVM is not rationally related to furthering the public health under any conceivable circumstance.

68. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her religious beliefs, unlawfully discriminating against the Plaintiff in violation of 42 U.S.C. § 1983; 1st, 5th and 14th Amendments due process clauses; N.Y. Executive Law § 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A FOURTH CAUSE OF ACTION:**
**VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE 5TH AND 14TH**
**AMENDMENTS**

69. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 68 as if the same were fully set forth at length herein.

70. Plaintiff has a fundamental right to her sincere religious beliefs and to protect herself from bodily harm, and from her life/employment being taken by the government for reasons that are not valid and that deprive her of 5th and 14th Amendment rights under the Constitution.

71. Defendants had no compelling or even legitimate reason to mandate the vaccines or to deny Plaintiff her religious accommodation and then order her to put an experimental substance into her body. As the vaccines cannot stop transmission of disease it is not within the police powers of the state to mandate them.

**AS AND FOR A FIFTH CAUSE OF ACTION:**
**VIOLATION OF the FREE EXERCISE CLAUSE**
**OF THE CONSTITUTION**

72. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 75 as if the same were fully set forth at length herein.

73. The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from burdening the free exercise of religion.

74. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof…" U.S. Const. amend. I.

75. The Supreme Court has held that "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 546 (1993).

76. The Mayor implemented the CVM so that the mandate was not generally applicable. The CVM makes exceptions for secular reasons that defeat the purpose of the CVM in that it allows employers to exercise a mechanism for individualized exceptions such as medical or religious accommodations.

77. Where there is evidence of animus, or where there is a mechanism for exemption or lack of general neutrality requirements, an infringement must be strictly scrutinized, and the Defendants bear the burden of showing that they applied a law or policy using the least restrictive means available to further a compelling state interest.

78. The problem code is a "scarlet letter" that prevents an employee from getting work at the DOE because they have been labelled "insubordinate", "guilty of misconduct" or "incompetent". The problem code has been written about here:

> **The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints**
> https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

and

**The New York City Department of Education, UFT, Problem Code, and Perpetual Fog Machine Continue To Prevent Unvaxxed Employees From Working** https://advocatz.com/2023/02/12/the-new-york-city-department-of-education-problem-code-continues-to-prevent-unvaxxed-employees-from-working/

See **EXHIBIT 12,** Declaration of Betsy Combier and email from Eric Amato.

79. Plaintiff was now flagged with the code and retaliated against because of her sincere religious beliefs and Defendants' neglect and disregard for her right to a hearing under Civil Service Law §75-b and NYSCHRL and NYCHRL.

80. In this regard, "'[d]iscipline' refers 'not merely to action that has an adverse impact, but adverse action that is motivated by a punitive intent'" (Monaco v New York Univ., 204 AD3d 51, 63 [1st Dept 2022], quoting Matter of Soriano v Elia, 155 AD3d 1496, 1498-1499 [3d Dept 2017], lv denied 31 NY3d 913 [2018]).

81. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

82. Plaintiff's sincerely held religious beliefs prohibited her from taking a Covid-19 vaccine. Defendants' discrimination against her violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

83. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore

these beliefs, forced her into a suspension without pay, denied her exemption requests and Appeals based upon an unconstitutional ruling that cited "undue burden" or "did not meet criteria" without any further details or reason, and terminated her employment.

84. According to the U.S. Supreme Court in Burlington Northern and Santa Fe Railway Company v White, 548 US 53 (2006), "suspension without pay is retaliatory discrimination, and even if back pay was eventually awarded – was an "adverse employment action," as was the change of responsibilities within the same job category. The Problem Code is an adverse employment action, as it permanently prohibits any DOE with this Code on their personnel files, any employment with the NYC DOE or their vendors.

85. On November 3, 2015, Defendant Katherine Rodi gave witness testimony in PERB case U-32479 on the procedure used to flag an employee with the problem code:

> "I oversee several units: Office of Personnel Investigation, Office of Employee relations, Office of Safety and Health, and I oversee the Disciplinary Support Unit work (DSU).

> At DSU we check and eventually flag folks. We check older discipline, older substantiated reports, we review them, we track them and then if all the qualifications that we build together are met, then we may flag a person.

> I was hired in June of 2012. In January 2013 I was promoted to Director of Employee Relations and added DSU to my workload.
> In April 2012 she was invited to a meeting for senior counsel at which there was a presentation about DSU. By the time I started there were at least a couple of hundred people who were flagged.

> Galaxy is a budgetary system that tracks all current employees by the table of organization and where they work. I check Galaxy for an employee's status. DSU is linked to Galaxy.

> The DSU flag is a web-based system, set up so that no one can be accidentally or easily flagged. To locate a person, I have to put in their social security number or their file ID. Then, I can attach documents to that person's name. Just attaching a document to a person's name does not get them flagged. The system has to meet two qualifications:
> There must be a substantiated report of discipline issued from an investigatory body;

There must be a letter of discipline that has been that has evidenced that the person received the discipline;
Then the person is manually flagged. A person has to actually go in there, review both documents, make sure that they match and then physically add a flag.

We upload the applicable document so that the hiring person or principal to be able to see what that flag means.
So the flag is not a flag.

A substantiated allegation without discipline will not result in a flag.

The flag was created because there were hiring managers and supervisors who had people working for them and they were unaware of major disciplinary case history.

"We didn't want to blind any supervisor"….While we don't have the capacity yet to have the entire file accessible on-line we figured that we would just take egregious or serious like substantiated discipline.

….[t]he **flag is put on before 3020-a charges are filed. the flag is put on with the letter of discipline, even if it says that any further misconduct may result in your termination."**

(*emphasis added*)

Rodi further testified that: If 3020-a charges are dismissed, she reads the decision to determine whether the charges for termination was dismissed or whether the actual underlined misconduct was dismissed. Sometimes the level of misconduct does not lead to termination, but that does not undo the flag. None of the close scrutiny actions by Rodi detailed above was done in Plaintiff's case.

86. Based on the foregoing, the Defendants discriminated against the Plaintiff on the basis of her religious beliefs, acted under color of law while unlawfully discriminating against the Plaintiff in violation of 42 U.S.C. § 1983; 5th and 14th Amendments to the U.S. Constitution; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**WHEREFORE,** the Plaintiff demands judgment against the Defendant for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding Plaintiff her former titled position, salary steps and raises, earned before October 2021, in full, with benefits; and

2.  Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

3.  Granting such other and further relief that the Court deems just and proper.

Dated: November 1, 2025

/s/Wendy Trudo
Wendy Trudo