*** **Filed** ***
06:44 PM, 02 Nov, 2023
U.S.D.C., Eastern District of New York

# Exhibit 1



September 10, 2021

**Via E-Mail Only**
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:    **Board of Education of the City School District of the City of New York
        and
        United Federation of Teachers, Local 2, AFT, AFL-CIO
        (Impact Bargaining)**

Dear Counsel:

        Enclosed please find my Award in the above referenced matter.

        Thank you.

                                        Sincerely,

                                        Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

Ex 1

```
----------------------------------  X
In the Matter of the Arbitration
                                    X
         between
                                    X
BOARD OF EDUCATION OF THE CITY                  Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF      X
NEW YORK
                                    X
            "Department"
                                    X
         -and-
                                    X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO               X

            "Union"                 X
----------------------------------  X
```

**APPEARANCES**

> **For the Department**
>   Renee Campion, Commissioner of Labor Relations
>   Steven H. Banks, Esq., First Deputy Commissioner
>   and General Counsel of Labor Relations
>
>
> **For the Union**
>   STROOCK & STROOCK & LAVAN, L.L.P.
>       Alan M. Klinger, Esq.
>
>
>   Beth Norton, Esq., UFT General Counsel
>   Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**BACKGROUND**

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

INDEX NO. 155983/2022
RECEIVED NYSCEF: 07/19/2022

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I. Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

    A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

INDEX NO. 155983/2022
RECEIVED NYSCEF: 07/19/2022

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

contained, herein, all parties retain all legal rights at all times relevant, herein.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK          )
                           )    ss.:
COUNTY OF NASSAU           )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

OOL.UFT.Impact Bargaining.awd

18

# Exhibit 2



The DOE's records indicate that you have not yet submitted proof of COVID-19 vaccination. As a reminder, all DOE employees are required to submit proof of COVID-19 vaccination (at least one dose) using the DOE COVID-19 Vaccination Portal no later than **October 1, 2021**.

If you are not on an approved vaccine exemption or leave and do not submit proof of vaccination in the DOE COVID-19 Vaccination Portal by October 1, 2021, you will be placed on Leave Without Pay (LWOP) beginning Monday, October 4, 2021, until you upload proof of vaccination (at least one dose) and attest that you intend to return to work. While on LWOP, you:

- Are not permitted to enter your work or school site,

- Are not permitted to work,

- Will not receive compensation, and

- Cannot use annual leave, CAR or sick time.

Proof of vaccination can be an image of your vaccination card, NYS Excelsior Pass, or other government record. Submitting this information will support New York City's pandemic response and recovery efforts and help ensure that the DOE schools and buildings are safe for all.

If you received the first dose of a two-dose series and are not fully vaccinated by October 1, you must receive the second dose and update your vaccination status within 45 days of the receiving the first dose.

For information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC.

For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

If you encounter technical issues using the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100.

For return-to-office questions please email stayinghealthy@schools.nyc.gov.

For compliance questions please email employeerelations@schools.nyc.gov.

# Exhibit 3

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS**, Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS,** a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS,** unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

   a. Students attending school or school-related activities in a DOE school setting;
   b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
   c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
   d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
   e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
   f. Individuals entering for the purpose of COVID-19 vaccination;
   g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
   h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

Page 4 of 4

# Exhibit 4

# First Harvest Ministries

## Presenting the Coming Kingdom

---

**From The Desk of the General Counsel of First Harvest Ministries**

RE: Written on behalf of those who share our religious objections.

To Whom It May Concern.

Reaching back into the long history of the American principle of religious deference and respect, we find an unbroken chain of the rule and the sacred consideration of conscientious religious objection; even our great military affords such respect to American Citizens in times of battle.

This letter is urgently written on behalf of those devout Christians of America, who believe that the Word of God forbids us to accept certain things and entities into our bodies, as our bodies are the living temple of the Holy Spirit. And as such, to ask us to violate these Commandments of our God would force us to choose between human science, so-called, versus our undying faith in the written commands of God! Our complete reverence and devotion is not the frailty of human government but instead to The Almighty Yahweh of Israel. The God by Whom we were created and to Whom we have given the whole of our lives.

We have vowed by our sacred honor to live according to His instructions in the beauty of Holiness. Whereas when the governments of men do not ask us to violate these deeply held truths, we gladly yield and obey.

We refer you to several verses of scripture for our claim of religious objection. In so doing, we would remind you of a time in the future when most of these claims will be brought before the courts when the heat of the moment (The Covid Crisis) gives way to the bedrock principles of the Constitution. Legal precedence proves, In the past, many companies have made the same mistake. While under the pressure of the moment, they gave no serious regard for religious objection nor the future consequences thereof. They have later wished to undo these ill-advised decisions; that violated religious conscience; it never fails; the religious objection is the right of all Americans.

These verses are just a few of many that we lay claim to in our Christian faith.
Leviticus 11:1-47
Deuteronomy 14:1-29
Genesis 7:2
Romans 12:1

1- Whereas we do not know the long-term consequences of the Covid Vaccine
2 - Whereas we do not understand its long term effects on our bodies (Gods Holy Temple)

We are forced to err on the side of spiritual caution and refuse to harm our temples in honor of God's Holy Word.

The 1st Amendment of the Constitution has protected these exact claims before the Supreme Court on many occasions. Even State governments have faced this glaring truth during the Covid crisis. They attempted to pass mandates and laws that violated this fundamental principle, only to have their wrong decisions righted before the Courts, with financial penalties.

While, as Christians, we strive to be at peace with all men and to obey all laws and mandates from a legitimately elected government. We do not do so in violation of God's Holy Laws, of which the protection of my body is one of those spiritual laws that supersedes all manmade laws in my religious conscience.

As an Ordained Christian Bishop, we respectfully present this letter on behalf of those members of our faith for your consideration.

Warmest Christian Regards:

J. Shane Vaughn, Th.D.
Founding Bishop
First Harvest Ministries International

FIRST HARVEST MINISTRIES INTL.
Address: 235 Old Spanish Trail
Waveland, Ms 39576
Email: brothervaughn@gmail.com
Website: www.firstharvestchurch.org

I, Wendy Trudo, share the same religious beliefs as Bishop Vaughn. I was raised as a Bible Believing Christian. I believe the Holy Bible is God's Truth. The Bible teaches us how to live life to Glorify our father in heaven. In That I am a Christian who follows God's Holy Word, I am exercising my right to receive religious exemption from the Covid vaccinations. The contents of the vaccines are tainted with fetal cells, chemicals, and synthetic materials that conflict with God's Holy teachings. The Bible tells me that I am made in the Image of God, that I must keep my Holy Temple pure to allow for the Holy Spirit. The Bible teaches what we can and cannot put in my body. The contents of The Vaccines strongly conflict with my sincerely held religious beliefs. I cannot betray God's Holy word. God's Sacred teachings state his expectations of me, to follow his instructions is essential to my moral. My sincere religious beliefs prevent me from partaking in your mandate. I am morally and religiously bound from participation. I am hereby submitting this letter to inform you of my religious exemption. Sincerely, Wendy Trudo

Confidential.

# Exhibit 5

## Your COVID-19 Vaccine Religious Exemption Application - Determination

solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
Sun 9/19/2021 4:21 PM
To: Trudo Wendy <WTrudo@schools.nyc.gov>

09/19/2021

Case#: A74141
File# 1153159
EMP ID: 1020453

Dear WENDY TRUDO,

We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate. Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

This application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate.

Under the terms of the Arbitration Award, you may appeal this denial to an independent arbitrator. If you wish to appeal, you must do so within one school day of this notice by logging into SOLAS https://dhrnycaps.nycenet.edu/SOLAS and using the option "I would like to APPEAL". As part of the appeal, you may submit additional documentation and also provide a reason for the appeal.

Sincerely,

HR Connect
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number GX5895344 N3418 COVID-19_VAX_ReligiousExempt_GenDenial

Exhibit 6

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
------------------------------------------------- X

In the Matter of the Arbitration

              X

       between

              X

NEW YORK CITY DEPARTMENT OF EDUCATION     Re: COVID Appeal

              X   UFT No. 361

       and

              X

Wendy Trudo
------------------------------------------------- X


Issue:    Covid Appeal – Religious Exemption


Date of Hearing:    September 27, 2021


Award


APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [x]   OTHER [ ]


_____
Arbitrator

September 28, 2021
Date

Exhibit 7

**APPENDIX**

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:     Pierre N. Leval,
José A. Cabranes,
Denny Chin,
       *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith, Amaryllis Ruiz-Toro,

        *Plaintiffs-Appellants,*

v.

Bill de Blasio, in his official capacity as Mayor of the City of New York, David Chokshi, in his official capacity of Health Commissioner of the City of New York, New York City Department of Education,

        *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado, Dennis Strk, Sarah Buzaglo,

        *Plaintiffs-Appellants,*

v.

The City of New York, Board of Education of the City School District of New York, David Chokshi, in his Official Capacity of Health Commissioner of the City of New York, Meisha Porter, in her Official

**ORDER**

21-2678-cv

21-2711-cv

Capacity as Chancellor of the New York City
Department of Education,

Defendants-Appellees.

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk

# Exhibit 8

Dear Division of Human Resources,                    1/12/22

Here are the responses to the 4 questions that you requested I provide for the City-Wide Panel.

1. *Whether you have previously taken any vaccinations.*

    I have not taken any vaccinations since affirming my Faith. Please refer to paragraph 1 of my religious exemption (RE) letter to the City Panel for re-appeal, dated 12/1/21.

2. *If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.*

    Please refer to paragraph 2 of my RE letter for more explanation regarding religious aversion on why I avoid many types of food and eat only what God instructed. I will not eat forbidden foods such as pork, rabbit, or Lobster. I also avoid foods that were not made by God such as but not limited to, MSG, food dyes, sugar tainted foods or beverages, artificial flavorings, fast food, heavily processed foods, or foods that have been exposed to harsh toxic chemicals in the farming or harvesting process. I eat and prepare foods per God's instruction ~~such as chicken, wild caught fish, fresh produce, natural herbs, and raw nuts and seeds, and I drink clean filtered water.~~ I don't want anything with synthetic chemical or toxic materials inside my body. I prefer to choose food as my medicine. Instead of cough syrup, I use honey, tea, lemon, and elderberry. If I have a headache, I choose lavender essential oil over aspirin.

3. *If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.*

    God said all life is sacred and it is a sin to commit murder. I cannot knowingly allow anything tainted with fetal cells to be injected into my body, as indicated in paragraphs 3-4 of my RE letter. It is a documented fact that all Covid vaccines are tainted with fetal cells in some capacity. Additional information attained from the FDA website (please refer to paragraph 5 of my RE letter) states that some vaccines have been manufactured with microorganisms from animals (Bovine) including serum from blood. Ingesting animal blood is forbidden by God so I shall refuse all vaccines. I will not allow impure substances to compromise my sincerely held religious beliefs as stated in paragraph 7 of my RE letter. I will not knowingly ingest any substance tainted with fetal cells or other impure substances.

4. *Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.*

    In 2003, I was required to provide Titer tests, via blood-work, in order to recognize naturally acquired immunity to certain illnesses, to forego vaccination requirements and enable me to attend graduate school, in NY. As stated in my RE letter, I refuse annual Flu shots as they are tainted with ingredients that are against my sincerely held religious beliefs. I have actively invested in my health with out of pocket expenses, not covered by my insurance, to schedule appointments with my Naturopathic Physician to learn which vitamins and supplements were needed to be my best self. I have actively invested in my health with intentional fasting, frequent exercise, time spent outside, prayer, faith, and food as medicine, for many years.

Exhibit 9

From: **Trudo Wendy** <WTrudo@schools.nyc.gov>
Date: Wed, Mar 9, 2022 at 12:28 PM
Subject: Fw: Reasonable Accommodation Appeal Determination
To: Wendy Trudo <Wendyt.otr@gmail.com>

Wendy Trudo MS, OTR/L
NYC Department of Education
Occupational Therapy Evaluator (Monday, Wednesday, Friday)
Senior Occupational Therapist PS 10x023 (Tuesday, Thursday)
Cell Phone: (203) 910-0840
PS 10x023 Phone: (718) 584 3992
Email: WTrudo@schools.nyc.gov

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.

---

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee
Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Monday, March 7, 2022 12:43 PM
**To:** Trudo Wendy <WTrudo@schools.nyc.gov>
**Subject:** Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of

Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# Exhibit 10

## New York State Attorney General
## Letitia James

**Dear Friends,**



New York State has a rich history of religious diversity, a tradition conceived in our nation's Bill of Rights and enshrined by laws that protect everyone's right to practice their faith freely.

As Attorney General, I am committed to protecting this proud history of religious tolerance. I have created an initiative in our Civil Rights Bureau to address religious freedom violations and aggressively enforce anti-discrimination laws. Through education, outreach, and litigation, our Civil Rights Bureau will root out practices of religious discrimination and ensure compliance with laws regarding reasonable accommodations for people of faith in the workplace.

Americans hold dear the right to practice, openly and faithfully, the religion of their choice. If you are concerned that your rights are being violated, this brochure may help you find the answers and resources you need. You may also contact the Civil Rights Bureau's Religious Rights Initiative at 212-416-8250 or 800-771-7755.

Sincerely,

*Letitia James*

Letitia James

## RESOURCES

If you think that your religious rights have been violated, you may seek assistance from the following offices:

New York State Office of the Attorney General
Civil Rights Bureau -- Religious Rights Initiative
120 Broadway
New York, New York 10271
212-416-8250 or 800-771-7755
TDD: 800-788-9898
http://www.ag.ny.gov/religiousrights

The Civil Rights Bureau investigates and prosecutes patterns or practices of religious discrimination

New York State Division of Human Rights
One Fordham Plaza, 4th Floor
Bronx, New York 10458
718-741-8400
TDD: 718-741-8300
www.dhr.state.ny.us

The New York State Division of Human Rights handles individual complaints of religious discrimination that violate the New York State Human Rights Law

United States Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004
Phone: 800-669-4000
TDD: 800-669-6820
http://www.eeoc.gov

The U.S. Equal Employment Opportunity Commission handles charges of religious discrimination in employment that violate federal Title VII.

The EEOC provides additional information for employers and employees regarding religious discrimination at:
http://www.eeoc.gov/laws/types/religion.cfm.

# RELIGIOUS RIGHTS
## in the workplace



ATTORNEY GENERAL
Civil Rights Bureau

# KNOW YOUR RIGHTS

### Balancing Faith with Work

Regardless of what religion you practice, fitting religious observance into a demanding workplace can be difficult for workers and employers. Federal and state laws ensure that New Yorkers are able to balance work responsibilities while also being faithful observers of their religion.[1]

### Protection From Religious Discrimination, Harassment and Retaliation

Under state and federal law, employers may not:

- Treat applicants or employees differently based on religious beliefs or practices, in any area of employment, including recruitment, hiring, assignments, discipline, promotion, and benefits;
- Subject employees to harassment because of religious beliefs or practices; or
- Retaliate against applicants or employees for reporting alleged religious discrimination in the workplace.

### Employers Must "Reasonably Accommodate" Religious Beliefs

State and federal laws require employers to make a reasonable religious accommodation for an employee's sincerely held religious beliefs, unless doing so creates an "undue hardship" on the employer. A reasonable religious accommodation is one that allows employees to follow their religious beliefs with a minor change to the work environment. Protected religious beliefs include not only those of traditional, organized religions, but also beliefs that are not part of a formal religion or sect, even if practiced by relatively few people.

To assess whether there is an undue burden or hardship, look at the specific facts of the request, such as:

- The type of workplace;
- The nature of the employee's duties;
- Any related cost incurred relative to the size and budget of the employer;
- The effect of an accommodation on the employer's business;

- Collective bargaining agreements or established seniority systems;
- The number of people who need the accommodation;
- The effect on workplace safety; and
- Whether the proposed accommodation conflicts with other laws.

It is also important to know that:

- The law protects all aspects of an individual's religious observance and practice, even practices that are not "required" by the religion;
- An employee must notify the employer of the need for an accommodation, and must provide sufficient time and information for the employer to assess the request;
- Employers and employees should work together to find an accommodation;
- An employer may ask questions about religious habits to evaluate the request and identify an accommodation; and
- An employer is not required to grant the specific accommodation requested, as long as the accommodation offered meets the employee's religious needs.

### Days of Religious Observance

New York State law requires employers to permit workers to observe holy days, unless doing so would cause an "undue hardship." The employer may require workers to:

- Make up work missed at another time;
- Charge time missed against paid leave, other than sick leave; or
- Take leave without pay for time not made up or charged to paid leave.

### Observing Other Religious Practices

Employers must also attempt to accommodate other religious practices, including religious dress and appearance requirements, and prayer during the workday.



### Types of Accommodation

Accommodations of religious practices often include scheduling changes, exceptions to dress codes, or designation of a work location for prayer. If agreeable to both parties, accommodations may include lateral transfers or changes to job requirements.

Though not required by law, employers may adopt flexible leave and scheduling policies to allow employees to meet their religious needs (i.e. flexible arrival and departure times, flexible work breaks, use of lunch time in exchange for early departure, or staggered work hours).

Under New York State Human Rights Law, employers may allow employees to swap shifts with coworkers if no other reasonable accommodation can be made.

### Implementing Sound Policies and Practices will Reduce Religious Discrimination and Harassment in the Workplace

Establishing clear policies and criteria for processing requests for religious accommodation can help reduce the potential for religious discrimination in the workplace. Effective policies and practices include provisions to:

- Inform employees of their right to request reasonable accommodations for religious observance;
- Establish a procedure to request religious accommodations;
- Train managers and supervisors to consider all available accommodation options;
- Confer promptly with employees about their religious needs, the requested accommodation and available options; and
- Fully assess each request and avoid stereotypes about religious practices, beliefs or the types of accommodations that are appropriate.

Exhibit 11



March 17, 2022

TRUDO, WENDY
5 SHAWE STREET
DANBURY, CT 06810

TRUDO, WENDY
OCCUPATIONAL THERAPIST
1020453

Dear TRUDO, WENDY:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order . . . . . . . . ation of all NYCDOE staff and that you would be terminated from DOE as a result. Compliance with that Order is a condition of employment. Since you did not comply with the Order and did not choose to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective March 17, 2022. Please note that your health insurance coverage through the City also ceases upon termination.

If you have not already done so, you must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

# Exhibit 12



**Department of
Education**

November 18, 2022


Brooklyn, New York


Title: Teacher/
Applicant ID:
PRP#:

Dear Ms.

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor. According to our records, your services with the DOE were terminated due to noncompliance with the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to request information so that your application could be processed for security clearance. Requests were sent to you at the email address you provided                     @aol.com' on November 10, 2022 and November 16, 2022. You were given a deadline to provide the requested information. To date, we have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors. As such, your case has been administratively closed, and no security clearance determination has been made. Please note that at this time, you do not have security clearance to work with the DOE and/or one of its contracted vendors.


Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education


cc: File

On Thu, Jan 20, 2022 at 10:07 AM, Karen King
<KKing@uft.org> wrote:

To: KKing@uft.org,
**Subject:**RE: Employee Code with the DOE
**Date:**Thu, Jan 20, 2022 11:05 am

Hello,

I hope that this email finds you well. The problem code is due to the vaccine mandate. Since you are unvaccinated then you are unable to work for the NYCDOE. In the future if this vaccine mandate was still in place and you were to get vaccinated you would be able to go back to the NYCDOE and the problem code would be removed.

**Karen King**

*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>

**Karen King** (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &
Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

MICHAEL KANE, et al,

                            Plaintiffs,

        - against --               21-CV-7863 (VEC) (Lead Case)

BILL DE BLASIO, et al.,

                            Defendants.

---------------------------------------------------------------- x

MATTHEW KEIL, et al.

                            Plaintiffs,

        - against -               21-CV-8773 (VEC)

THE CITY OF NEW YORK, et al.,

                            Defendants

---------------------------------------------------------------- x

      **MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §

1746, that the following statements are true and correct:

      1.        I am the Deputy Director of the Office of Employee Relations

("OER") at the New York City Department of Education ("DOE"), and I have held this position

since November 2014. Prior to serving in my current position, I was an Agency Attorney with

the DOE's Office of the General Counsel for approximately four years.

      2.        I submit this declaration to provide information about DOE's

employment record system in response to certain allegations regarding "problem codes" as set

forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162). I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.        In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.        The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.        In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.        Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.       In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:       May 27, 2022
             New York, New York

By: _____
             Mallory O. Sullivan
             Deputy Director
             Office of Employee Relations

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MICHAEL KANE, et al.,

                             Plaintiffs,

       - against -

BILL DE BLASIO, et al.,

                             Defendants.

Case No. 21-cv-7863 (VEC) (Lead)

------------------------------------------------------------X

MATTHEW KEIL, et al.

                             Plaintiffs,

       - against -

THE CITY OF NEW YORK, et al.,

                             Defendants.

Case No. 21-cv-8773 (VEC)

------------------------------------------------------------X

## DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

## First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a **"Problem PR"** notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

2

## Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs' face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

     June 3, 2022                 Respectfully submitted,

Barry Black
Nelson Madden Black LLP
*Attorney for Plaintiffs*
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4303

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X  :
                                                           :
MICHAEL KANE, et al.,                                      :
                                                           :
                                    Plaintiffs,            :
                                                           :   Case No.  21-cv-7863 (VEC) (Lead)
              - against -                                  :
                                                           :
DE BLASIO et al.,                                          :
                                                           :
                                    Defendants.            :
------------------------------------------------------------X  :
                                                           :
MATTHEW KEIL, et al.                                       :
                                                           :
                                    Plaintiffs,            :
                                                           :   Case No.  21-cv-8773 (VEC)
              - against -                                  :
                                                           :
THE CITY OF NEW YORK et al.,                               :
                                                           :
                                    Defendants.            :
------------------------------------------------------------X

### DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.  My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.  I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.  I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.  I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.  I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.  From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.  I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.  I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.   When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.  I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.  I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.  I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.   I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.   In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
     June 3, 2022

_Betsy Combier_
By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To:                                           Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<hnorton@uft.org>, Kking@uft.org <Kking@uft.org>. dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
            May 20, 2022

By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:

Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha
Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420