*** Filed ***
08:27 PM, 19 Jan, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

________________________________________x

**WENDY TRUDO,**

Plaintiff

**Docket No: 25-CV-01345 (HG) (LKE)**

against-

**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS, Chancellor, and KATHERINE RODI, Director of Employee Relations,**

Defendants

________________________________________x

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Wendy Trudo
*Pro Se Plaintiff*
5 Shawe Street
Danbury, CT 06810
Email: wendyt.otr@gmail.com

## PRELIMINARY STATEMENT

"The Free Exercise and Free Speech Clauses of the First Amendment protect an individual engaging in a personal religious observance from government reprisal; the Constitution neither mandates nor permits the government to suppress such religious expression. Pp. 11–32. …At its heart, the Free Exercise Clause of the First Amendment protects the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of religious acts." Kennedy v Bremerton School District,, 597 U. S__2022., at 524 (internal quotation marks omitted; See Mahmoud v Taylor et al., Supreme Court No.24-297, June 27, 2025). The Supreme Court has paved the way for Constitutional protection of religious exemptions.

Plaintiff's sincere religious beliefs requests were denied by Defendants without reason or Just cause, but simply used a statement about some kind of "undue burden" that was never explained. This is against the ruling in Groff v De Joy (U.S. Supreme Court, No. 22-174, Decided June 29, 2023: ""undue hardship" is shown when a burden is substantial in the overall context of an employer's business". Defendants clearly did not meet this burden in their Motion. Plaintiff included in her AC the argument that the COVID vaccine mandate as applied to her unquestionably burdened her religious exercise, precisely the kind of "objective danger to the free exercise of religion that the First Amendment was designed to prevent".( Wisconsin v. Yoder, 406 U. S. 205).

On December 8, 2025 the Supreme Court issued Certiori and Summary Disposition of Miller, Joseph, et al., v McDonald, Comm'r, et al., No, 25-133:

"The petition for a writ of certiorari is granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of Mahmoud v. Taylor, 606 U. S. 522 (2025)."

Plaintiff filed this action seeking injunctive relief, monetary relief, including past and on- going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected rights to her sincere religious beliefs, and denial of procedural and substantive due process rights pursuant to 42 U.S.C. Section 1983, 1st, 5th and 14th Amendments to the United States Constitution, 42 U.S. Code § 2000e et seq., New York State Human Rights Law (NYSHRL), NY Executive Law §296 et seq., and New York City Human Rights Law (NYCHRL), NYC Administrative Code Title 8, and New York City Civil Service Law 75-b. Plaintiff's Amended Complaint is based upon factual evidence and not conjecture, as Defendants incessantly allege. Plaintiff submitted EXHIBITs 1-12 with her Amended Complaint to prove her statements, including the invalidity of Defendants' claim on p. 4 of their Motion:

"Critically, the VM created a condition of employment for DOE employees, including Plaintiff, to be vaccinated. The Second Circuit has unequivocally held that the VM was a valid, lawful "condition of employment" for City employees such as Plaintiff."

As further argued below, the VM never created a condition of employment or changed Plaintiff's terms of employment. The holding of the Second Circuit is now stale and invalid as a matter of law for employees of the Department of Education in New York City. Additionally, Plaintiff argues in her Opposition that the COVID Vaccine Mandate "CVM" as applied to her was not neutral and not generally applicable; that both Aviles-Roman and Rodi were properly served; that she has successfully pled her claim to as-applied Free Exercise Clause and Establishment Clause claims under the First Amendment; that she has successfully pled a First Amendment religious accommodation claim based on Defendants' failure to accommodate her sincerely held religious beliefs; that NYCHRL and NYSHRL are not time-barred, and no Notice of Claim is required when a public interest is implicated. Plaintiff has provided sufficient factual evidence to show that Defendants ignored the Constitution and punished her for presenting her sincere religious beliefs to them for an accommodation, then placed her in the Problem Code database

used to target employees for misconduct. Plaintiff was never given a meaningful opportunity to be heard under the 14th Amendment. She has successfully pled retaliation and discrimination. Also, Plaintiff does not have to present evidence of disparate treatment given to her rather than others at the pleading stage to dismiss the Motion. She requests that this Court move to discovery on her pleadings in her Amended Complaint.

Defendants' Memorandum of Law in Support of Defendants' Motion To Dismiss The Amended Complaint (henceforth "Motion") offers no facts to support their hoax put in place to cull the public workforce in NYC public schools after kids permanently left the system during the pandemic. What really happened was that Defendants created a scam wherein religious discrimination, retaliation, and deprivation of Constitutional rights could be validated with appropriate media coverage of the alleged 'deadly consequences' in store for anyone who did not get vaccinated. This was all false information promoted by the Defendants who at all times acted under color of law. See:

**Former NY Governor Andrew Cuomo And Dr. Jay Varma Admit That No Authority Existed For The COVID Mandate Terminations**
https://advocatz.com/2024/09/20/former-ny-governor-andrew-cuomo-admits-that-no-authority-existed-for-covid-mandate-terminations/

The Problem Code posted by Defendants in Plaintiff's personnel file, *not* the CVM, permanently altered her employment – current and future – without Just Cause or any due process. See **EXHIBIT 12**, Amended Complaint ("AC"). The Defendants answered with the absolute denial of such claims and showed bad faith declaring loss of income, medical benefits and/or permanent physical/mental impairment was the employee's choice, not the NYC DOE's burden or liability.

At no time was the Vaccine Mandate neutral and generally applicable, as Defendants have constantly argued. School bus drivers, delivery people, volunteers, Broadway actors and

sports players were given unilateral exemptions from having to take the COVID Vaccine. See Emergency Executive Order 62 here:

https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62.

Since the clause for individualized review of requests for accommodations was put into the Mandates issued by the DOH in 2021 (EX. 3, AC), the argument in favor of the CVM having general applicability has been unilaterally discarded.

Additionally, Defendants have lied to this Court in alleging that the terms and conditions of employment were changed by the CVM, and that Chancellor Aviles-Ramos and Rodi were never properly served. Defendants' other misconceptions and false information are reviewed below.

The Motion submitted and opposed here must be denied in its' entirety and this Court should move this case to discovery and settlement. The Exhibits already submitted to this Court in support of Plaintiff's causes of action are: **EXHIBITS 1-12.** Attached to this Opposition are **EXHIBITS 13-18.** Plaintiff requests that each and every argument, cause of action, background facts and Exhibits in her Amended Complaint be incorporated in full into the arguments made here by reference.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "does not require 'detailed

factual allegations,'" but demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). “The assessment ‘does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal’ conduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.” *Lynch,* 952 F.3d at 75. A complaint should not be dismissed simply because it appears recovery is remote or unlikely. *Twombly*, 550 U.S. at 556.

## STATEMENT OF RELEVANT FACTS

On p. 2 of Defendants’ Memorandum of Law in Support of Defendants’ Motion To Dismiss the Amended Complaint (henceforth “Motion”), while detailing the DOHMH announcement in August 2021 that DOE employees would be subject to a Vaccine Mandate (“VM”), Defendants allege that: “Every Court that has considered the VM has repeatedly upheld it as **unlawful**”, (*emphasis added*) basically nullifying their entire Motion To Dismiss. Plaintiff agrees with their statement.

On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor Relations (“OLR”) wherein Nespoli wrote about MLC’s officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

> “Make no mistake, despite calling this a vaccination policy, the City’s proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated.”

On September 10, 2021 Arbitrator Martin Scheinman, issued his Arbitration Award that was facially and procedurally discriminatory, unlawful and unconstitutional in its' application to Plaintiff and other DOE employees who requested religious exemption/accommodation in lieu of taking the VM. See EXHIBITS 1,5,6,7, 9,and 10, Amended Complaint ("AC"). The alleged due process given to Plaintiff was invalid as a matter of law, unconstitutional, and a scam invented by Defendants to grab Plaintiff's property – her employment – without just compensation in violation of the 5th Amendment Takings Clause.

This scam and these above mentioned lies of the City Law Department crushed any attempt Plaintiff made to get an accommodation for her work as an occupational therapist while holding on to her sincere religious beliefs. (EXHIBIT 4, AC).

The DOE application procedure for employees requesting religious exemptions from getting vaccinated was a hoax.

Although government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020). (See AC, p. 4)

Plaintiff, a stellar employee without any disciplinary issues, exhausted her administrative remedies by appealing her denials of religious accommodation whenever asked to do so by the Defendants. See Amended Complaint, pp. 4-9 and EXHIBITS 1-12. All her efforts to get an

accommodation offer were in vain. No accommodation was ever suggested by the Defendants. The Citywide Panel, a review Panel, did not act in good faith by denying every appeal except for a selected few. Newly released transcripts recorded at depositions of members of the Citywide Panel show that no member reviewed the individual appeals of the denial of religious accommodation/exemption denied by the NYCDOE. Decisions were computer-generated to say "Undue Hardship" or "did not meet criteria". See **EXHIBIT 13,** Sarah Paulson's Citywide Panel decisions. See the Testimony of the members of the Citywide Panel, who all agreed that there were too many appeals for anyone to remember who did what or who was granted or not:

**The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty**
https://advocatz.com/2025/01/25/new-york-state-court-of-appeals-issues-an-amended-judgment-in-new-yorkers-for-religious-liberty-et-al-v/

Additionally, the DOE has recently blocked any information on who received religious accommodations by the Citywide Panel. **EXHIBIT 14**, DOE Denies access to information about the Citywide Panel.

On January 14, 2022, Plaintiff provided detailed responses to each of the questions, to the Citywide Appeal Panel to explain why she could not be vaccinated with the COVID-19 vaccine. **EXHIBIT 8.** She was then denied and terminated.

On Monday, March 7, 2022, Plaintiff received an email stating that the Citywide Appeal Panel denied her religious exemption accommodation due to *Undue Hardship*. This is the response they provided:

> "The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request. The decision

classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning." **EXHIBIT 9**

The Citywide Panel violated Plaintiff's religious rights**. EXHIBIT 10**

On or about March 20, 2022, Plaintiff received a letter, dated, March 17, 2022, that she was officially terminated from the Department of Education due to non-compliance with the Vaccine Mandate. This was traumatic for Plaintiff, and unlawful. **EXHIBIT 11** Termination.

On March 24, 2022, the Mayor issued EMERGENCY EXECUTIVE ORDER 62, (see p. 5) ,https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62 which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This EO showed the discrimination and retaliation of the Defendants and that the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted City Agencies, employees at the Department of Education, and municipal workers.

On or about April 28, 2022, Plaintiff became aware of an email communication sent out by Beth Norton from the UFT that indicated any person who applied for a religious exemption from the COVID- I 9 vaccine will be placed on a "problem code" that is associated with her fingerprints with the Human Resources' Office of Personnel Investigations which prevented her from obtaining any employment opportunities in New York City in public or private schools.

**EXHIBIT 12** Problem Code documents. Plaintiff was never given notice about this Code by the Defendants. Additionally, there is no information about how to get off of this database.

Plaintiff filed her Complaint in this Court on 3/13/2025. The Defendants – The NYC Department of Education ("NYC DOE"), Melissa Aviles-Ramos, Chancellor, and Katherine Rodi ("Rodi"), Director of Employee Relations, all named in their official capacities – were served on 5/6/2025

by a professional process server. Mr. Jeremy Cooley from Preferred Process Servers, Inc., in Whitestone N.Y. filed the three (3) served Summons on each Defendant in this case on 5/12/2025. (See Docket #6).

On 11/2/2025 Plaintiff uploaded 12 Exhibits for her Amended Complaint (filed 11/3/2025).

After the COVID-19 pandemic panic became a topic of concern in the fall of 2019, the City of New York started a process that was based upon an autocratic presumption of police power with widespread discrimination in implementing its COVID Vaccine Mandates. There were many of them, from 2021-2023. In February 2023 the City made compliance voluntary.

However, the single consistent clause, that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law" made all the DOH Orders not generally applicable. Defendants chose to ignore this clause and created a procedure that falsely claimed to review all accommodation requests. None were reviewed or heard. Defendants ignored due process rights and adopted an as-applied discriminatory and meaningless religious accommodation procedure. They also conditioned approvals for accommodating municipal workers on blind support for an Emergency Use Authorization (EUA) vaccine that was temporary yet protected no one, and did not prevent the spread of the virus. See DOH Order, September 15, 2021, **EXHIBIT 3,** AC

In Health Freedom Def. Fund, Inc., v. Carvalho, No. 22-55908, 2024 WL 2873372 (9th Cir. June 7, 2024), the Ninth Circuit reinstated constitutional challenges to the Los Angeles Unified School District's Covid-19 vaccine mandate. The Ninth Circuit overruled the district court's determination that there is a legitimate government interest in mandating a vaccine that cannot stop the spread of disease. See:

**Former NY Governor Andrew Cuomo And Dr. Jay Varma Admit That No Authority Existed For The COVID Mandate Terminations**
https://advocatz.com/2024/09/20/former-ny-governor-andrew-cuomo-admits-that-no-authority-existed-for-covid-mandate-terminations/

**THE COVID VACCINE MANDATE AS APPLIED TO PLAINTIFF WITH AN ATTACHED PROBLEM CODE REQUIRED A HEARING PURSUANT TO CIVIL SERVICE LAW 75-B ON THE DENIAL/FAILURE TO ACCOMMODATE**

Plaintiff, a public servant charged with misconduct (the Problem Code) has a fundamental right to due process before being terminated. The question is, what process is due, especially under the circumstances presented here, where Plaintiff was placed on the Problem Code and suspended without pay yet never received any meaningful hearing or accommodation?

Civil Service Law 75-b clearly spells out the procedure:

“2. (a) A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. “Improper governmental action” shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

3. (a) Where an employee is subject to dismissal or other disciplinary action under a final and binding arbitration provision, or other disciplinary procedure contained in a collectively negotiated agreement, or under section seventy-five of this title or any other provision of state or local law and the employee reasonably believes dismissal or other disciplinary action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a defense before the designated arbitrator or hearing officer. The merits of such defense shall be considered and determined as part of the arbitration award or hearing officer decision of the matter. If there is a finding that the dismissal or other disciplinary action is based solely on a violation by the employer of such subdivision, the arbitrator or hearing officer shall dismiss or recommend dismissal of the disciplinary proceeding, as appropriate, and, if appropriate, reinstate the employee with back pay, and, in the case of an arbitration procedure, may take other appropriate action as is permitted in the collectively negotiated agreement.

(b) Where an employee is subject to a collectively negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions and which contains a final and binding arbitration provision to resolve alleged violations of such provisions of the agreement and the employee reasonably believes that such personnel action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a claim before the arbitrator. The arbitrator shall consider such claim and determine its merits and shall, if a determination is made that such adverse personnel action is based on a violation by the employer of such subdivision, take such action to remedy the violation as is permitted by the collectively negotiated agreement."

Plaintiff did not, at any time, waive her rights to a hearing on her religious exemption/ requests. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI. The Problem Code is well-known both inside as well as outside the NYC DOE. See **Exhibit 12,** Declaration of Betsy Combier and the attached email from Eric Amato.

The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or this must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

Plaintiff, a senior public employee, has a property right to her job and she never waived that right. Cleveland v Loudermill (470 US 532 (1985)) was a landmark 1985 U.S. Supreme Court case that established that public employees with a property interest in their jobs are entitled to a

"pre-termination" hearing, which requires notice of the charges and an opportunity to respond. The Court held that this minimal hearing, coupled with subsequent post-termination procedures, satisfies the due process requirements of the Fourteenth Amendment. This ruling prevents public employees from being fired summarily without a chance to defend themselves, even if the hearing is not a full-blown trial. Plaintiff's accommodation requests should have been given strict scrutiny, and she should not have been punished by Defendants placing a "Problem Code" on her fingerprints marking her as guilty of misconduct for requesting these accommodations. The actions of the Defendants were malicious and made in retaliation for Plaintiff requesting the accommodation and not getting the vaccine. Any penalty that reduces the benefits of these rights, must have Just Cause.

See also the Scheinman Award dated June 27, 2022 where Arbitrator Martin Scheinman apologized for denying all DOE employees a full and fair hearing when their denials from the DOE of accommodation requests were presented. His apology was issued six months after his Award and all his holdings in that Award were thrown out as "constitutionally suspect" (See **EXHIBIT 7**, AC: Case of Kane et al., v De Blasio et al. (21-cv-2678; doc. #117 (VEC)) and Keil v The City of New York et al. (21-cv-2711 (VEC)) and by the Court of Appeals on November 28, 2021). **EXHIBIT 15**.

In the June 27 2022 Award, Scheinman wrote:

"... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

Thus, Scheinman admitted to deliberately and in bad faith creating LWOP,a lawless employment term made up out of whole cloth, that he described as “not disciplinary” to remove teachers like Plaintiff without a due process hearing**.**

The Supreme Court, in the case Burlington Northern and Santa Fe Railway Company v Sheila White, No. 548 US 53 (2006) wrote:

“unanimously agreed that **White suffered retaliatory discrimination** (*emphasis added)* when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classification and the pay was eventually reinstated, the action was nevertheless sufficiently harsh to constitute retaliatory discrimination.”

Recent published transcripts of Eric Eichenholtz, members of the Citywide Panel and Katherine Rodi have shown that the Defendants have been defending their terminations and lack of accommodations given to Plaintiff here and in multiple cases involving public employees, based upon false claims. They never reviewed any accommodation requests because there were just <u>too many</u>. See

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from- getting-the-covid-vaccine-by-municipal-workers/

The post above includes the full transcript of the creator of the Citywide Panel, Eric Eichenholtz; the Affidavit of Dr. Harvey Risch; Affidavit of Dr. Peter McCullough; Declaration of Dr. Bhattacharya; Affirmation of Alan Deutsch; Affidavit of Michael Melocowsky; and the Affirmation of Florina Getman. Mr. Eichenholtz, Mr. Deutsch, Mr. Melocowsky, and Ms. Getman could not give any details about the number of people granted accommodations, nor why these nameless individuals were given the accommodations and remained on salary. They also could not define an “undue burden” nor the criteria used to

make any decisions. Dr. Risch, Bhattacharya and McCullough wrote about the ineffectiveness of the vaccines to protect against COVID, and how no mandate should ever have existed.
The COVID vaccine was shown to be uneffective and harmful starting in 2020, but this information was never considered by Defendants, whose sole goal was to remove employees from the City payroll without Just or Probable cause.
Plaintiff does not merely allege that she requested an accommodation and it was denied. She alleges that Defendants: (1) placed her on leave without pay (LWOP) without Probable Cause; (3) later terminated her employment; and (4) flagged her personnel file with a Problem Code which operated as a misconduct designation, barred future DOE employment, and carried stigmatic consequences affecting liberty and reputation interests. The U.S, Supreme Court has ruled that suspension without pay for any length of time is retaliatory discrimination: Burlington Northern and Santa Fe Railway Company v Theresa White, 548 US 53 (2006).

The deprivation of constitutional rights is per se irreparable harm see Ferreyra v. Decker, 456 F.Supp, 549 [S.D.N.Y. 2020], Mitchell v. Cuomo, 748 F.2d 804, 806 [2d Cir. 1984].

Defendants have not submitted any proof of their specious, deceptive and false claims that Plaintiff did not establish a prima facie case for discrimination and employment retaliation. It looks like now, all information on whose appeals for religious accommodation will be blocked by the NYC DOE See **EXHIBIT 14**, Letter from the DOE re Citywide Panel.

Defendants' argument that she suffered an adverse employment action for "failing to comply with the conflicting employment requirement" is also false. The conflict, if any, was with the unlawful due process which denied Plaintiff's religious accommodation.  There was no employment requirement to get vaccinated with the COVID vaccine or be fired. Defendants made that up, and then used it as their standard to dismiss Plaintiff's case. No change to

Plaintiff's conditions and terms of employment were ever made. Plaintiff's Union never ratified any change in her employment, nor is the vaccine mentioned in the UFT contract.

Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led to her wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a LWOP forced leave without pay, never before seen in employment law or practice.

Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religious beliefs.

Clearly, Defendants deprived Plaintiff of her fundamental Constitutional right to a due process that included a fair hearing in front of a neutral arbitrator, due to her being charged with misconduct with the application of the problem code on her file without any notice to her..

**PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE NOT TIME-BARRED AND NO NOTICE OF CLAIM IS REQUIRED FOR FEDERAL CLAIMS**

Defendants wrote in their Motion that Plaintiff's claims had to be dismissed because they were time-barred due to Education Law §3813 and a 1-year statute of limitation. Defendants are wrong on the Law. Human Rights Laws in New York now have a 3-year statute of Limitations. On November 17, 2023, Governor Hochul signed State Assembly Bill A00501 into law, extending the statute of limitations for discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") from one year to three years.

New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 n. 2 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970,

71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." 487 U.S. at 140, 108 S.Ct. at 2307. In Brandon v. Board of Education, 635 F.2d at 973 n. 2, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action.

NYC Human Rights Law (NYCHRL)  and NY State Human Rights Law (NYSHRL) strongly address religious accommodations, requiring employers to provide "reasonable accommodations" ensuring equal access to jobs unless it's an "undue hardship" for the employer, with a key focus on a good-faith "cooperative dialogue" process. Employers must discuss requests with employees in good faith to find a suitable accommodation, not just deny them outright. Here, Defendants never entered into a cooperative dialogue, never offered to, and never sujested any accommodation whatsoever. They also never proved their allegation of "undue burden"

Defendants cannot argue that Plaintiff's claim to NYSHRL and NYCHRL jurisdiction was time-barred. First, there were no changes made to Plaintiff's conditions of employment, even to allow a vaccine in the contract – which did not happen. Secondly, a Problem Code for misconduct was secretly placed on her personnel file, and the damages are continuing. Until today Plaintiff is a charged employee, guilty of misconduct, although she was given no notice and no pre-deprivation or post-deprivation due process hearing. Her requests for accommodation to remain

working remotely were denied outright or never responded to. The violation of NYSHRL and NYCHRL were continuous and never-ending.

In a June 18,2020, the Appellate Division of the First Department in Hosking v. Memorial Sloan Kettering Medical Center, 186 AD3d 64 (l st Dep' 2020) held that a reasonable accommodation requires a "good faith interactive process," clarifying the individual needs of the employee and the business, and the appropriate accommodation. The New York State Human Rights law requires "at least some deliberation between the parties about the viability of an accommodation, while the New York City Human Rights law, places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. See, Jacobsen v. New York City Health and Hospitals Corp., 22 NY3d 824 (2014).

The New York City Human Rights Law ("NYCHRL") requires a more rigorous process than the State Human Rights Law. Courts must construe the "NYCRL" broadly in favor of discrimination against plaintiffs, to the extent that such a construction is reasonably possible." Albino v. City of New York, 16 NY3d 473 (2011).

Unlike the NYSRHL, the NYCHRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. Jacobsen v. New York City Health and Hospitals Corporation, 22 NYS3d 824 (2014). The record clearly indicates that here, Defendants' administration of the accommodation requests proceeded without any "cooperative dialogue."

Cooperative dialogue presumes an interactive process/engagement wherein information is

exchanged by the parties in a manner where each party is afforded the opportunity to be heard by the other. Such interaction need not be face to face and may be in written form as long as the needs of the person requesting the accommodation understands and knows of the potential accommodations.

We now know that Defendant Katherine Rodi was the Director of a secret "General Committee" where all submissions in September-November 2021 to the DOE's Solas email were denied outright *without review.* See the Rodi Deposition Testimony on March 25, 2025, in full, at:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued in bad faith. Defendants omitted information of their long-term policy in accommodating employees according to law. This matter shows that Defendants not only did not engage in a dialogue about the accommodations already given to them, but punished Plaintiff as guilty of misconduct for applying for exemption/accommodation.

In Wilson v. Garcia, the Supreme Court, in addressing the borrowing provision of the civil rights statute, determined that choosing "a simple broad characterization of all Section 1983 claims" better suited the purpose of the statute rather than choosing the most analogous state statute for a particular claim. (Id. at p. 272, 105 S. Ct. at p. 1944) If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim… different statutes of limitations would be applied to the various Section 1983 claims

arising in the same State, and multiple periods of limitations would often apply to the same case. Wilson v. Garcia, supra, 471 U.S. at pp. 273-74, 105 S.Ct. at pp. 1945-46). The Court concluded that in light of "the federal interests in uniformity and certainty, section 1983 was meant to be given a broad and simple interpretation, and the Courts were directed "to select in each State, the one most appropriate statute of limitations for all section 1983 claims." (Id. at p. 275, 105 S.Ct. at p. 1948).

The statute of limitations issue was further refined in a Supreme Court decision determining where two or more statutes of limitations exist within a state for certain enumerated torts, as in New York, the appropriate statute to apply is the residual or general personal injury statute. Meiselman v. Richardson, 743 F. Supp. 143 (EDNY 1990), citing Owens v. Okure, 488 U.S. 235, 109 S. Ct. 573, 102 L.Ed. 594 (1989). Specifically, the Court in Owens concluded that the three-year personal injury statute, CPLR 214(5), was better suited to govern section 1983 actions than the one-year statute of limitations for certain intentional torts specified by CPLR 214(3). The Court indicated that it was fulfilling the goals set forth in Wilson to "end this 'conflict, confusion, and uncertainty." (Owens v. Okure, 109 S. Ct. at p. 576, quoting Wilson v. Garcia, 471 U.S. at p. 266, 105 S.Ct. at p. 1941), by applying "the one most analogous state statute of limitations" to all section 1983 claims. Meiselman v. Richardson, 743 F. Supp. 143, 146 (EDNY 1990). In Owens, as in Wilson, the Court rejected determining the statute of limitations based on the type of theory of action before the court and its similarity to a particular state claim. Id.

Here, the federal law is applicable because of the Supremacy Clause; the three-year statute of limitations should apply. See Purcell v. New York Institute of Technology, 931 F.3d 59 (2nd Cir. 2019), where the Second Circuit reversed the District Court because the lower court mistakenly

held that a Title VI race claim against a school had to be commenced via an Article 78 proceeding and thus the four-month statute of limitations applied. The Second Circuit held that federal law preempts state law and the three-year statute of limitations applied.

As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial. Based on the foregoing, Defendants failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religious beliefs, and unlawfully discriminated against her in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

The City and Defendants named in this case acting under color of law created the CVM in order to terminate as many municipal workers and DOE employees as possible in a lawless manner and punish anyone who challenged their presumed total power. The goal was to fire municipal workers who had employment protections such as Civil Service titles or tenure, which are soundly despised by the leaders of City politics.

In order to remove the highest number of DOE employees as possible, Defendants created many excuses for their unilateral terminations yet not a single valid reason was given. In order to prove a fundamental right and allege a procedural due process violation, Plaintiff must plead facts plausibly showing that [s]he possessed a protected liberty or property interest and that [s]he was deprived of that interest without constitutionally sufficient process. *See O'Connor*

*v. Pierson*, 426 F.3d 187, 195–96 (2d Cir. 2005). That is exactly what Plaintiff alleges occurred in her set of facts presented here.

Shocking new information recently filed in this Court reveals that (1) all requests for religious and medical accommodations/exemptions requested by NYC DOE employees in the fall of 2021 were denied *without review* in the first step of applying for medical/religious relief from getting vaccinated. See Katherine Rodi Deposition Testimony about her as Director of the DOE's "General Committee" (Advocatz.com, p.7); (2) the DOE and Department of Citywide Services (DCAS) will not reveal any particulars on who or why an employee was given an accommodation and push the burden of proof on the victims of the deprivation of those rights (see **EXHIBIT 14**); and (3) Defendants have submitted false information to this Court saying that Banks and Rodi were not properly served and therefore are not under this Court's jurisdiction. This is a lie, explained below.

The fact is that the NYC DOE keeps public information secret. The process for putting a problem code on an employee's personnel file as well as why a problem code is placed there at all, are secrets that the City will not reveal. What is *not* a secret is who has a problem code. This is easy to find by administrators, vendors, UFT personnel and anyone who knows computer codes. See EXHIBIT 12 in AC, Declaration of Betsy Combier. Ms. Combier – never an employee of the NYC DOE -worked at the UFT and could find out whether or not an employee of the DOE had a problem code or not, in a few seconds.

Defendant Katherine Rodi's testimony on March 25, 2025 is particularly disturbing, especially the part where she testified about how she was part of a secret NYC DOE "General Committee" and she denied every DOE employee's accommodation appeal *without reviewing any of them*:

"With further questioning, Rodi explains that the general committee members were under pressure to reopen in-person schooling and couldn't do so without replacing at least some of the DOE employees who were barred from entering school buildings. Rodi describes the flood of requests for accommodations the DOE received during the fall of 2021:

*We received it from teachers, from custodians, from school food workers, from principals, from assistant principals, from, you know, name the person, name the job. And the fact is that we needed to run a school system . . .*

She describes denying accommodation requests in order to "resign" employees so that they could be replaced:

*[T]he only option was [sic] had was to resign them from the system without any bias so that we could hire other teachers. Because, again, we had a school to run.*

Later [Attorney Austin] Graff questions Rodi about the details of what happened to each individual's request for an accommodation:

*Q. Okay. So when you received an application for religious exemption, what did you review to make a determination whether to grant or deny?*
*A. We made sure that the person had appropriately applied in the right area. A number of people would check religious exemption, but they were really looking for a medical exemption.*
*We also made sure that they actually submitted something with their application, because some people included blank sheets of paper. And, then, if it was a medical—if it was in the wrong place, we—we immediately advised them so that they could reapply or reapply in the right place. If it was a blank piece of paper, we immediately advised them so that they could submit appropriate documentation.*
*And then, other than that, we then—we reviewed to make sure they had submitted something to support, you know, that it was religious in nature. We didn't judge what it was. And even if it was just a piece of paper that they wrote out. And then we denied their request."*

These actions by Defendants are deliberate, misleading and made in bad faith. No hearing was ever held where Plaintiff could be heard on her reasons for not getting vaccinated against COVID. She has been denied her procedural and substantive due process.

The dismissal of Plaintiff's NYSHRL and NYCHRL claims as time-barred fails to account for accrual and continuing-violation principles. Plaintiff alleges not only termination in 2022, but refusal of reinstatement in 2023, continued "Problem Code" designation, and

ongoing foreclosure from employment—conduct within the limitations window. At minimum, factual disputes concerning when the claims accrued and whether later adverse acts occurred preclude dismissal at the pleading stage. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Additionally, New York recognizes a public interest exception to the Notice of Claim requirement for claims involving  Constitutional violations, discrimination, and systemic governmental misconduct. Plaintiff's claims arise from a vaccine mandate affecting thousands of public employees and implicating constitutional and civil rights concerns of clear public import. Courts decline to impose strict notice requirements in such circumstances, especially where the municipality received actual notice and suffered no prejudice. Plaintiff has filed Notices of Claim against the City but nonetheless, Defendants have been given adequate notice of her deprivation of rights and Defendants have never responded.

Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992). Thus, Plaintiffs' claims are not time barred, and Human Rights Law has, in any case, a 3-year statute of limitations. Defendants' Motion on this point must be dismissed.

**THE CVM AND DOH NEVER CHANGED THE TERMS AND CONDITIONS OF PLAINTIFF'S EMPLOYMENT AND THE CVM WAS A SCAM**

In their Motion To Dismiss Plaintiff's Amended Complaint (p. 3), Defendants wrote:

"Critical to this case is that the Vaccine Mandate created a condition of employment for DOE employees, including Plaintiff, to be vaccinated. On this point, the law is clear. The Second Circuit has unequivocally held that the Vaccine Mandate was a valid, lawful "condition of employment" for DOE employees."

We know now that the COVID Mandate for DOE employees never changed their terms or conditions of employment. That was a lie told by the Defendants to pursue the hoax of police power and assist Big Pharma gain a wide market share in medical insurance. See Judge Porzio In Garvey v City of NY (Index No. 85163/2022),

"Petitioners – all but one – applied for [religious] exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. There was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021……"

and,

"Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

Indeed, the inconvenient truths are that (1) the vaccine did not protect anyone from getting the vaccine and (2) the CVM did not stop transmission of the COVID virus to other people. In August 2021, Wolf Blitzer interviewed CDC Director Rochelle Walensky, who acknowledged on national television that the vaccines could not stop transmission of COVID. https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html

That's not all that went wrong in 2021-2022. Not a single union in the City agreed with, or ratified, a change of the terms and conditions in their contracts that agreed with the City's mandate to coerce their members into getting vaccinated or lose their jobs. Yet the City imposed the CVM and argued that the mandates changed union workers' terms of employment. The City used this false information and their power over the City budget and salaries as collateral, destroying the lives of thousands of honest, good workers and their families.

## DEFENDANTS KATHERINE RODI AND MELISSA AVILES-RAMOS WERE PROPERLY SERVED IN THEIR OFFICIAL CAPACITIES

The exposure and media coverage of the problem code placement on NYC DOE employees files was, in 2022 (See EXHIBIT 12, AC; argued in front of the Second Circuit Court of Appeals February 8, 2023), certainly inconvenient to Defendants. Indeed, in their Motion they claim that two Defendants sued officially, Aviles-Ramos and Rodi, were never served. This is a lie, and Defendants are aware of this lie, yet pursue the lack of service intentionally and in bad faith because they have no valid arguments as to why they criminalized religious beliefs.

Plaintiff filed her Complaint in this Court on 3/13/2025. The Defendants – The NYC Department of Education ("NYC DOE"), Melissa Aviles-Ramos, Chancellor, and Katherine Rodi (”Rodi"), Director of Employee Relations, all named in their official capacities – were served on 5/6/2025 by a professional process server. Mr. Jeremy Cooley from Preferred Process Servers, Inc., in Whitestone N.Y. filed the three (3) served Summons on each Defendant in this case on 5/12/2025. (See Docket #6).

Not only were Defendants Aviles-Roman and Rodi served properly in this case, but an Affidavit by Betsy Combier explaining the history of service on Katherine Rodi serves to make Defendants' claim submitted here in their Motion even more insidious. See **EXHIBIT 16**, Affidavit of Betsy Combier; and **EXHIBIT 17**, Letter to Magistrate Judge Merkl, case of Trabacchi v Department of Education of the City of New York, et al., 24-cv-06123.

Katherine Rodi has given testimony that she is the Director of Employee Relations at the NYC DOE and as such she is the official at the DOE who places a problem code on

employees' personnel files. She has been doing this since 2012. See **EXHIBIT 18**. Testimony from PERB Case U-32479 November 2015. See also Sacay v. The Research Foundation of the City University of New York, 44 F. Supp.2d 505 (E.D.N.Y. 1999) (noting that inference that a supervisor played a role in the allegedly discriminatory decision to discharge an employee provided a minimally sufficient basis for individual liability under the HRL. Additionally, Rodi testified in March 2025 that she was the Director of a secret "General Committee" that denied all accommodation requests by DOE employees without review. See the entire Deposition  Testimony of Ms. Rodi in this post:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from- getting-the-covid-vaccine-by-municipal-workers/

Therefore, Chancellor Melissa Aviles-Roman and Director of Employee Relations Katherine Rodi were properly served and are under the jurisdiction of this Court. As the Defendants have made no opposition to Plaintiff's claims of their deprivation of Plaintiff's Constitutional rights, their Motion To Dismiss should be denied in its' entirety.

## PLAINTIFF'S WELL-PLED PLEADINGS ON HER DEPRIVATION OF CONSTITUTIONAL RIGHTS CANNOT BE DISMISSED AT THE PLEADING STAGE

The Defendants recommend dismissal of several claims based on factual assumptions that are contradicted by the record or require further development. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). Courts in this Circuit consistently reverse

dismissal where the district court resolves factual disputes against the plaintiff at the pleading stage. See McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

Plaintiff alleges that she was subjected to adverse governmental action resulting in professional, financial, and constitutional injury for which she has not been compensated. Her Amended Complaint attaches and incorporates Exhibits 1-12 and her Opposition attaches Exhibits 13-18 which provide detailed factual support.

Among other things, Plaintiff alleges that after she requested a religious accommodation, Defendants placed a "Problem Code" on her personnel file, deeming her ineligible for continued employment, effectively labeling her guilty of misconduct, and preventing her access to reinstatement, payroll, and other professional benefits. (Amended Complaint, Ex 12).

Whether Plaintiff received a meaningful process, including appeals or access to Citywide Panel review, is a fact-intensive inquiry not suitable for resolution on a motion to dismiss. See Hu v. City of New York, 927 F.3d 81, 92 (2d Cir. 2019) (comparator and procedural details are matters for discovery).

By presuming Plaintiff received the same procedural opportunities as other DOE employees and that existing DOE procedures "in theory" satisfied constitutional requirements, Defendants resolved disputed facts and drew inferences in their favor. This is improper at the Rule 12 stage. See McKenna, 386 F.3d at 436 ("On a Rule 12 motion, the defendant cannot defeat plaintiff's claim by submitting its own version of the facts.").

Defendants also faulted Plaintiff for not identifying additional details regarding similarly situated employees. However, such additional detail is not required at the pleading stage; discovery exists precisely to supply comparator information and procedural evidence not accessible to a pro se litigant. Hu, 927 F.3d at 88–90 ("a plaintiff need not plead detailed comparator allegations to survive a motion to dismiss").

Because Defendants applied an incorrect pleading standard, resolved disputed facts, and drew inferences against Plaintiff, dismissal of these claims is improper under Rule 12(b)(6). Plaintiff's claims should proceed to discovery.

**DEFENDANTS DEPRIVED PLAINTIFF OF HER CONSTITUTIONAL RIGHTS**

These actions taken by Defendants were intentional, and discriminatory, and were put into place to retaliate against Plaintiff and all NYC public workers who dared to exercise their Constitutional rights by challenging the COVID VM in order to remain unvaccinated while working at the Department of Education in NYC ("NYC DOE").

The COVID Mandate never usurped Plaintiff's constitutional right to her employment and due process as defined in the 14th Amendment. Plaintiff never waived her rights to these statutes which are in full force and effect in New York City and State. In other words, the Defendants chose to ignore the challenged constitutional due process arguments and continued to terminate almost all municipal workers and educators who applied because those were good business strategies.

The COVID Vaccine Mandate was not neutral. Rather than accommodate Plaintiff, as the Collective Bargaining Agreement (CBA) of the UFT guaranteed, the City adopted a facially

discriminatory accommodation policy that conditioned an exemption on very limited, unsupported criteria that were, for the most part, kept secret. There was no criteria to grant or deny anyone's claim or request for exemption/accommodation.

The NYC DOE's "police power" was nothing more than a big hoax, a public relations scam paid for by Big Pharma and it's investors, who got kickbacks to assist the City in cleaning house of City payrolls. The mass layoff of municipal workers 2021-22 was the result. The Defendants were successful, until they weren't.

Plaintiff, an occupational therapist since 2006 with NYC DOE has protected rights under the 14th Amendments, Civil Service Law 75-b and Human Rights Laws that were never honored by the Defendant. Defendant wants this court to believe that an experimental, temporary, City-ordered Emergency Usage COVID vaccine could trample Plaintiff's Constitutional rights to her pre-deprivation due process hearing pursuant to the 14th Amendment. As Defendants deliberately and intentionally deprived Plaintiff of her pre-termination due process, Plaintiff's case cannot be considered given any due process post-deprivation, either. Defendants at all times acted under color of law. Plaintiff has validated a Section 1983 claim under the 14 Amendment, NYSHRL and NYCHRL..

Defendants' complete disregard for the civil rights of Plaintiff - to obtain a religious accommodation from adverse circumstances that could lead to personal harm - stemmed from their refusal to hear any challenges to their alleged police power. So they invented a scheme which facially met the criteria for State and Federal Courts for alleged 'religious accommodation' but *as applied* to Plaintiff here, disregarded Constitutional Law, contractual rights, and rationality. Retaliation and bad faith drove these efforts by Defendants to remove

Plaintiff and other good, hard-working public employees from their jobs and health insurance for no reason and without Just Cause.

At all relevant times herein, Defendants the NYC Department of Education, Melissa Aviles-Ramos Chancellor, and Katherine Rodi, Director of Employee Relations, developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and or customs exhibiting deliberate indifference to the constitutional rights of Plaintiff as they applied the COVID Vaccine Mandate "CVM" to her in 2021-2022, with continuing damages until today. Plaintiff argues in this Opposition to the Motion that Defendants, acting under color of law, applied the CVM to her in such a way as to deprive her of a reasonable accommodation, weaponized the accommodation procedure by attaching a disciplinary code – the "Problem Code" to her personnel file, and deprived her of her Constitutional fundamental right to a due process hearing before she was deprived of her salary and employment because she requested an accommodation for her religious beliefs that are in conflict with the COVID Vaccine. Cleveland Board of Education v Loudermill, 470 U.S. 532 (1985):

"The principle that, under the Due Process Clause, an individual must be given an opportunity for a hearing *before* he is deprived of any significant property interest requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. The need for some form of pretermination hearing is evident from a balancing of the competing interests at stake: the private interest in retaining employment, the governmental interests in expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. Pp. 470 U. S. 542-545."

Plaintiff argues that she was given no meaningful pre- or post-deprivation remedy and no offer of any accommodation.

## CONCLUSION

Plaintiff has proven that her right to a pre-deprivation and post-deprivation hearing on her request for a religious accommodation for her sincere religious beliefs was never given to her due to the malfeasance of the Defendants cited in this case. Plaintiff respectfully requests that the Defendants' Motion To Dismiss the Amended Complaint be denied in it's entirety, and this case proceed immediately to a settlement or judgment against Defendants.

Dated: January 19, 2026

**/s/Wendy Trudo**
Plaintiff pro se