UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WENDY TRUDO,

Plaintiff,

v.

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK; MELISSA AVILES-RAMOS, Chancellor; KATHERINE RODI, Director of Employee Relations,

Defendants.

**MEMORANDUM & ORDER**
25-CV-01345 (HG)

**HECTOR GONZALEZ**, United States District Judge:

*Pro se* Plaintiff Wendy Trudo initiated this action against Defendants Department of Education of the City of New York ("DOE"); the DOE Chancellor, Melissa Aviles-Ramos; and the DOE Director of Employee Relations, Katherine Rodi (together, "Individual Defendants"). *See* ECF No. 15 (Amended Complaint; "AC").[1] Plaintiff brings claims under 42 U.S.C. § 1983, alleging violations of her First, Fifth, and Fourteenth Amendment rights and related violations of New York State law that stem from Defendants' denial of her request for a religious exemption from the COVID-19 vaccine mandate and their subsequent termination of her employment after her failure to comply with the mandate. *See id.* Defendants move to dismiss the Amended Complaint for improper service on Individual Defendants under Rule 12(b)(5) and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 21 (Motion to Dismiss; "Mot."). For the reasons set forth below, Defendants' Rule 12(b)(6) motion is GRANTED.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

### I. Factual Background

In March 2006, Plaintiff began working for the DOE as an occupational therapist. AC ¶ 9. On March 12, 2020, then-Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in New York City because of the COVID-19 pandemic. *See id.* ¶ 17. In response, the DOE closed all schools within its jurisdiction in New York City, and Plaintiff began a hybrid work schedule, on which she remained until September 2021. *See id.*

In July 2021, Mayor de Blasio announced a "Vaccine-or-Test" mandate, which required New York City workers, including United Federation of Teachers ("UFT") educators, to be vaccinated against COVID-19 or test weekly. *See* ECF No. 16 at 5 (Plaintiff's Exhibits 1–12). On August 23, 2021, Mayor de Blasio and NYC Commissioner of Health and Mental Hygiene, David Chokshi, announced a new "Vaccine Only" mandate requiring those working in NYC DOE buildings to show that they had started the vaccination protocol by September 27, 2021 (the "Vaccine Mandate"). *See id.* Failure to comply meant those employees would not be allowed inside DOE buildings, would not be paid for work, and would risk losing their jobs and benefits. *See id.* The Vaccine Mandate did not expressly provide for medical or religious exceptions or

---

[2] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). Because Plaintiff is proceeding *pro se*, the Court will consider "the factual allegations set forth in the original Complaint [and] the Amended Complaint . . . as well as their respective attachments." *Sander v. Enerco Grp., Inc.*, No. 21-cv-10684, 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023). And although the general rule is that a plaintiff may not raise new allegations in her opposition to a motion to dismiss, because Plaintiff is representing herself, the Court will grant her some leeway by considering both the allegations in the Amended Complaint and Plaintiff's Opposition in deciding the motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

accommodations, nor did it address "matters of due process with regard to job and benefits protection." *Id.* at 5.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") concerning the Vaccine Mandate. *See id.* at 6. Martin Scheinman of Scheinman Arbitration and Mediation Services ("SAMS") then presided over an arbitration between the Board of Education of the City School District of the City of New York and UFT, after which he issued an arbitration award on September 10, 2021 (the "Arbitration Award"). *See* AC ¶ 20; ECF No. 16 at 1–20. The Arbitration Award established: (i) a process for exemptions, accommodation requests, and appeals, ECF No. 16 at 8–15; (ii) a leave without pay ("LWOP") system for employees who did not request, or were denied, an exemption, but would continue to receive health insurance, *id.* at 15–18; (iii) a provision for employees on LWOP to extend or separate from the DOE and receive benefits, *id.* at 18–19; and lastly, (iv) a provision providing for a "unilateral separation" process for employees who failed to comply with the Vaccine Mandate and did not avail themselves of any other provisions of the Arbitration Award, *id.* at 19–20. Plaintiff acknowledges that the Arbitration Award "ordered all NYC DOE employees to get vaccinated by October 1, 2021, submit a valid vaccination card to the [DOE] by October 4, 2021, or be removed from salary immediately." AC ¶ 21. Plaintiff did not get the COVID-19 vaccine because her "sincerely held religious beliefs . . . forbade her" from doing so. *Id.* ¶ 54

On September 15, 2021, the Department of Health amended the Vaccine Mandate and added a reasonable accommodations provision.[3] *See* ECF No. 16 at 27. Two days later, Plaintiff

3 Specifically, the provision provides that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." ECF No. 16 at 27.

applied for a religious accommodation exempting her from the Vaccine Mandate. *See* AC ¶ 23. In her letter in support of her request, Plaintiff wrote that "[she] is a Christian who follows God's Holy word, [she is] exercising [her] right to receive religious exemption from the COVID vaccinations. The contents of the vaccines . . . strongly conflict with [her] sincerely held religious beliefs. [She] cannot betray God's Holy word." ECF No. 16 at 30. On September 19, 2021, the DOE denied Plaintiff's request due to an "undue hardship" on the DOE and its operations, which she appealed immediately. *See* AC ¶ 24; ECF No. 16 at 32. On September 26, 2021, Plaintiff took part in a virtual appeal hearing, at which she explained why her "sincerely held religious beliefs" prevented her from receiving the COVID-19 vaccination. AC ¶ 27. The DOE denied her appeal the next day. *Id.* ¶ 28. On October 1, 2021, Plaintiff received an email informing her that she was officially on a LWOP and could not enter any school building or engage in conversation with students or parents unless she received and uploaded proof of vaccination. *Id.* ¶ 29.

On November 28, 2021, the Second Circuit issued its opinion in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), in which it ordered that "Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel [('Citywide Appeal Panel')]" and that such reconsideration "shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the [New York State Human Rights Law ("NYSHRL")], and the [New York City Human Rights Law ("NYCHRL")]" rather than "the challenged criteria set forth in" the Arbitration Award. *See* ECF No. 16 at 37 (attaching *Kane*, 19 F.4th 152); AC ¶ 30.

On December 3, 2021, Plaintiff was permitted to reapply for a religious exemption accommodation with the Citywide Appeal Panel. AC ¶ 32. She uploaded additional documents explaining her religious beliefs and, upon request from the Citywide Appeal Panel, answered

four additional questions concerning those beliefs. *Id.* ¶ 32–33, 35. The Citywide Appeal Panel denied Plaintiff's appeal on March 7, 2022, finding that "DOE has demonstrated that it would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in-person learning." *Id.* ¶ 36. On March 17, 2022, DOE issued a letter notifying Plaintiff that she was officially terminated from her employment due to non-compliance with the Vaccine Mandate. *Id.* ¶ 37.

One week later, on March 24, 2022, the City issued Emergency Executive Order No. 62, which permitted athletes, performing artists, and others to remain unvaccinated while continuing to work. AC ¶ 38. On April 28, 2022, Plaintiff became aware that the DOE planned to place a "problem code" in the personnel file of "any person who applied for a religious exemption from the COVID-19 vaccine." *Id.* ¶ 39; *see also* ECF No. 16 at 50. The problem code would prevent "her from obtaining any employment opportunities in New York City in public or private schools." AC ¶ 39. Defendants did not provide Plaintiff with a hearing on the charges brought against her. *Id.* ¶ 40.

## II. Procedural History

On March 13, 2025, Plaintiff filed a *pro se* complaint against the DOE and Individual Defendants. *See* ECF No. 1. Plaintiff then sought leave to amend her original complaint on September 29, 2025, *see* ECF No. 14, which she filed on November 3, 2025. *See* AC.

The Amended Complaint puts forth five causes of action: (i) "[S]ection 1983 unlawful retaliation and discrimination while acting under color of law in violation of NYSHRL and NYCHRL"[4]; (ii) failure to accommodate Plaintiff's religious beliefs; (iii) violation of the

[4] The Court understands this first cause of action to be six separate claims: two Section 1983 claims, two New York State law claim, and two New York City law claims.

Fourteenth Amendment equal protection clause; (iv) violation of the substantive due process clauses of the Fifth and Fourteenth Amendments; and (v) violation of the Free Exercise and Establishment Clauses of the First Amendment.[5] *See generally* AC. Beyond her five enumerated causes of action, Plaintiff further alleges that Defendants violated New York City Administrative Code Title 8 and New York Civil Service Laws 75-b and 77. *See id.* ¶¶ 1, 50.

On December 17, 2025, Defendants filed their motion to dismiss, *see* Mot., and a memorandum in support of their motion to dismiss, *see* ECF No. 22 (Defendants' Memorandum in Support of Motion to Dismiss; "Mem."). About one month later, Plaintiffs filed an opposition. *See* ECF No. 25 (Plaintiff's Opposition; "Opp."). On February 13, 2026, Defendants filed their reply. *See* ECF No. 29 (Defendants' Reply; "Reply").

## **LEGAL STANDARD**

### *A. Federal Rule of Civil Procedure 12(b)(5)*

The Court may exercise personal jurisdiction over a defendant only if service of process was procedurally proper. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Under Rule 12(b)(5), a defendant may "challeng[e] the mode of delivery or lack of delivery of the summons and complaint." *Liu v. Garland*, No. 23-cv-1132, 2024 WL 2941850, at *1 (E.D.N.Y. June 11, 2024). A plaintiff faced with a Rule 12(b)(5) motion bears the burden of establishing that service was sufficient. *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

[5] Plaintiff's fifth cause of action is only for "Violation of the Free Exercise Clause," but contained in the factual allegations thereunder is a claim that Defendants also violated the Establishment Clause of the First Amendment. *See* AC ¶ 82.

*B. Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In making this assessment, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). The Court must, however, disregard any "conclusory allegations, such as formulaic recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.*

*C. Pro Se Plaintiff*

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020). "A *pro se* litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Ramos-Nunez v. United States*, No. 14-102, 2019 WL 1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)). This includes the applicable rules of service. *See Cassano v. Altshuler*, 186 F. Supp. 3d 318, 321 (S.D.N.Y. 2016).

## DISCUSSION

Defendants seek to dismiss the Amended Complaint in its entirety on both procedural and substantive grounds. First, Individual Defendants challenge the sufficiency of service and move to dismiss all claims against them for improper service. *See* Mem. at 17–18. Second, all Defendants argue that the NYSHRL and NYCHRL claims fail to comply with the applicable notice of claim requirements and are time barred. *See id.* at 19–21. Third, all Defendants argue that Plaintiff's constitutional and state law claims fail as a matter of law. *See id.* at 21–43. Because Plaintiff's claims fail as a matter of law, the Court need not address Defendants' other arguments in dismissing the Amended Complaint.

### I. Federal Claims[6]

#### *A. Religious Discrimination*

Plaintiff brings two claims for religious discrimination under Section 1983: (1) a claim for disparate treatment and (2) a claim based on a failure to accommodate. Claims brought under Section 1983 are analyzed using the same basic elements as those used for claims brought under Title VII. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).

##### i. Disparate Treatment

To state a claim for employment discrimination based on disparate treatment under Section 1983, Plaintiff must plead that she (1) "is a member of a protected class," (2) "was qualified" for the position, (3) "suffered an adverse employment action," and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent."

---

6 On each issue except retaliation and substantive due process, *see infra* Parts I.B.i and I.C.ii, the Court adopts the legal framework and analysis in Judge Donnelly's decision in *Parrino v. Dep't of Educ. of City of New York*, No. 24-cv-8892, 2026 WL 407507 (E.D.N.Y. Feb. 13, 2026).

*Hurley v. Dep't of Educ. of City of New York*, No. 24-cv-1664, 2025 WL 2711471, at *4 (E.D.N.Y. Sept. 23, 2025) (quoting *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023)). Defendants argue that Plaintiff "fails to 'ple[a]d any facts that show that her discharge was motivated by discriminatory intent, nor that suggest the employer's desire to avoid providing an accommodation was a motivating factor in its decision to terminate her.'" Mem. at 25 (quoting *Hurley*, 2025 WL 2711461, at *4). Plaintiff does not meaningfully address this argument but instead asserts that she "does not have to present evidence of disparate treatment given to her rather than others at the pleading stage[.]" Opp. at 4.

The COVID-19 vaccine mandate was "a lawful condition of employment." *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 316 (E.D.N.Y. 2022), *aff'd*, No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023). Thus, once the mandate went into effect and Plaintiff refused to get the vaccine, she was no longer qualified for her position. *See Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) ("District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim."); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023) ("[T]o be qualified for her position as a Teaching and Research Center Nurse 2, Plaintiff must have been vaccinated against COVID-19 or received a medical exemption; it is undisputed that she did neither."). Plaintiff's claim thus fails to meet the second element.

"In cases alleging religious discrimination based on disparate treatment, a plaintiff may plausibly plead facts that give rise to an inference of unlawful discrimination where the plaintiff

alleges that they 'actually require[] an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in [its] decision.'" *Hurley*, 2025 WL 2711471, at *4 (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015)). Plaintiff has not alleged any facts that show "her discharge was motivated by discriminatory intent" or that Defendants' "desire to avoid providing an accommodation was a motivating factor in its decision to terminate her." *Id.* Although Plaintiff makes the conclusory allegation that Defendants "discriminated against [her] on the basis of her religious beliefs," AC ¶ 57, the Amended Complaint makes clear that her employment was terminated, and her personnel file was tagged with a problem code, because she refused to get the COVID-19 vaccine. *See* AC ¶¶ 37, 39. She also acknowledges that other employees were "granted accommodations," *see* AC ¶ 43, which "cuts against any reasonable inference that Defendant[s] terminated Plaintiff or others out of a reluctance to provide a religious accommodation." *Hurley*, 2025 WL 2711471, at *5. For these reasons, Plaintiff does not state a claim for religious discrimination under a theory of disparate treatment.

ii. Failure to Accommodate

"'To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim' based on a failure to accommodate 'must plausibly allege that (1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she] [was] disciplined for failure to comply with the conflicting employment requirement.'" *Hurley*, 2025 WL 2711471, at *5 (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-cv-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)). However, a plaintiff's claim fails if the defendant shows "that the prospective accommodation would cause the employer to suffer an undue hardship." *Id.*

Defendants do not contest any of the three elements but rather argue that the DOE would have suffered undue hardship if it had granted Plaintiff's accommodation request. *See* Mem. at 27. There is no dispute that Plaintiff held a bona fide religious belief conflicting with an employment requirement, *see* AC ¶¶ 27, 35, 54; ECF No. 16 at 30, that she informed the DOE of this belief, *see* AC ¶¶ 23, 27, or that she was disciplined for failure to comply, *see* AC ¶¶ 29, 37; *Hurley*, 2025 WL 2711471, at *6 (Plaintiff's "placement on leave without pay and her ultimate termination from her position qualify as 'discipline.'"). The only question, then, is whether the DOE would have suffered undue hardship, as it claimed when the Citywide Appeal Panel rejected Plaintiff's appeal. *See* AC ¶ 36 ("[I]t would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in-person learning."). Plaintiff argues that Defendants' "invocation of 'undue hardship' defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination." *Id.* ¶ 81. In evaluating undue hardship, the Court notes that Plaintiff was not seeking an accommodation but rather, a blanket exemption from the vaccination requirement. "[C]ourts have routinely found that a full exemption from the COVID-19 vaccine would constitute an undue hardship for Title VII religious accommodation claims." *Hurley*, 2025 WL 2711471, at *7; *see also Beickert v. New York City Dep't of Educ.*, No. 22-cv-5265, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) ("Even if [the plaintiff] took precautions such as wearing gloves, masks, and a face shield, her presence as an unvaccinated individual would have presented a risk to the vulnerable and still primarily unvaccinated student population and other employees."); *Fugelsang v. Dep't of Educ. of New York City*, No. 23-cv-8332, 2025 WL 974276, at *3 (E.D.N.Y. Mar. 31, 2025) ("[T]he hardship that the presence of unvaccinated employees would pose for the DOE has been well-documented by courts in this circuit.").

Accordingly, Plaintiff's failure to accommodate claim is dismissed.

### *B. First Amendment Claims*

#### i. Retaliation

Plaintiff next alleges that she was subject to "retaliation . . . on the basis of her religion." *See* AC ¶ 52. She claims that she "was flagged with the [problem] code and retaliated against because of her sincere religious beliefs" and that Defendants then placed her on "suspension without pay, denied her exemption requests and Appeals . . . and terminated her employment." *Id.* ¶¶ 79, 83. This conduct, according to Plaintiff, constituted retaliatory discrimination. *Id.* ¶ 84.

"[I]n order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Defendants address the first and third elements, arguing that Plaintiff "fails to allege that [she] engaged in protected activity, that the DOE had knowledge of any protected activity, or a causal connection between any protected activity and an alleged adverse employment action." Mem. at 30.

"[R]equesting religious accommodation constitutes a protected activity." *Billings v. New York State Dep't of Corr. & Cmty. Supervision*, No. 19-cv-11796, 2021 WL 4150925, at *7 (S.D.N.Y. Sept. 10, 2021); *see also Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) ("[A] claim for retaliation can be based upon a request for reasonable accommodation."). Defendants only contest whether requesting a religious accommodation may qualify as a protected activity under the NYCHRL and NYSHRL, and do not dispute its

suitability for Section 1983 claims. *See* Mem. at 31. Because the Court dismisses Plaintiff's state and city claims on different grounds, *see infra* Part II, it need not address these arguments. For purposes of her Section 1983 retaliation claim, requests for religious accommodation constitute a protected activity.

Defendants next argue that Plaintiff fails to allege "that she engaged in protected activity prior to any alleged adverse employment action" or "a causal connection between any protected activity by Plaintiff and an adverse action." *See* Mem. at 31–32. This argument undercuts the first and third elements of a retaliation claim, but the Court focuses its attention only on the element of causation. Causation may be established "by showing that protected activity was close in time to the adverse action," *see Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009), and requires that the protected conduct "was a substantial motivating factor in the adverse employment action," *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). Plaintiff fails to plead "a causal connection between the protected speech and the adverse action" and her retaliation claim is therefore dismissed. *See Goord*, 320 F.3d at 352.

"[I]t is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Piligian v. Icahn Sch. Of Med. At Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020); *see also Adams v. New York State Unified Ct. Sys.*, No. 22-cv-9739, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) ("Adams's termination followed ineluctably from the policy that Defendants announced *before* Adams applied for an exemption; it was neither personal to her nor based on any protected activity. In other words, it was set in motion *before* she requested a religious accommodation." (emphasis in original)). Here, Plaintiff alleges that the Arbitration Award was issued on September 10, 2021, and that DOE sent the agreement to "all NYC DOE

employees," *before* she sought a religious accommodation on September 17, 2021. *See* AC ¶¶ 21, 23. After Plaintiff did not comply with the Vaccine Mandate, Defendants properly enforced the policy and began the adverse actions. Because "it is an inescapable rule of causality that a cause must precede its effect," *see Billhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288, 297 (S.D.N.Y. 2009), Plaintiff fails to establish causation for her retaliation claim, *see Adams*, 2023 WL 5003593, at *4.

Moreover, Plaintiff fails to establish that her request for religious accommodation "was a substantial motivating factor in the adverse employment action." *Smith*, 776 F.3d at 118. To the contrary, as Defendants note, Plaintiff alleges that the Vaccine Mandate "was 'Defendants' Citywide hoax to remove City workers from payroll . . . to retaliate and discriminate against Plaintiff and similarly situated educators chosen randomly in order to remove expensive senior employees such as Plaintiff from the City payroll.'" *See* Mem. at 31–32 (quoting AC ¶ 18). Defendants say that this indicates Plaintiff was alleging that the "DOE implemented the [Vaccine Mandate] for political, economic and/or budgetary reasons, rather than . . . [as] retaliation for a protected activity." *Id.* at 32. Moreover, as discussed previously, the Amended Complaint makes clear that Plaintiff's employment was terminated and her personnel file was tagged with a problem code, because she refused to get the COVID-19 vaccine. *See supra* Part A.i. Plaintiff's own allegations therefore belie her contentions that Defendants acted with discriminatory animus and causation is thus not satisfied.

Plaintiff's retaliation claim is dismissed.

ii. <u>Free Exercise and Establishment Clause</u>

Plaintiff next alleges that "Defendants' discrimination against her violates the Free Exercise and Establishment Clauses of the First Amendment[.]" AC ¶ 82. Defendants argue that

"Plaintiff's First Amendment Free Exercise claim fails because [she] cannot show that Defendants burdened a sincere religious practice pursuant to a policy that is not neutral or generally applicable . . . or that the purpose of the Vaccine Mandate was the suppression of religion or religious conduct." Mem. at 41–42. As to Plaintiff's Establishment Clause claim, Defendants argue that the Amended Complaint "brings no Establishment Cause of action" but to the extent one can be inferred, "Plaintiff fails to allege any facts that Defendants acted to prefer one religion over another or with the purpose o[r] effect of advancing or inhibiting religion." *Id.* at 41 n.7. Plaintiff fails to plausibly allege either of her First Amendment claims.

"The Free Exercise Clause . . . protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025), *cert. denied sub nom. Kane v. New York, NY*, No. 25-126, 2025 WL 3620461 (U.S. Dec. 15, 2025) (quoting *Kane v. De Blasio*, 19 F.4th 152, 163–64 (2d Cir. 2021)). "This protection, however, does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id.* "For purposes of a facial claim, a 'law that is facially neutral [may] still run afoul of the neutrality principle if it 'targets religious conduct for distinctive treatment.'" *Id.* Plaintiff alleges that Executive Order No. 62 shows that the Vaccine Mandate "was not neutral, and did not have general applicability, but targeted City Agencies, employees at the [DOE], and municipal workers." AC ¶ 38. But the Second Circuit has "previously determined that the City's 'Vaccine Mandate, in all its iterations, [wa]s neutral[,] generally applicable,' and facially constitutional under the Free Exercise Clause." *New Yorkers for Religious Liberty*, 125 F.4th at 330 (quoting *Kane*, 19 F.4th at 164). Nor would an as-applied challenge survive, because the plaintiff has not alleged "more-than-conclusory allegation[s] that

the finding of undue hardship was erroneous or pretextual." *Id.* at 333; *see also Hurley*, 2025 WL 2711471, at *12 (E.D.N.Y. Sept. 23, 2025) (finding where the plaintiff "on numerous occasions refers to 'undue hardship' as the reason for the Citywide Panel's denial of her appeal," "her pleading suggests that Defendant denied her exemption request 'on the independent ground of undue hardship'" (quoting *New Yorkers for Religious Liberty*, 125 F.4th at 335)). Plaintiff thus fails to state a Free Exercise claim.

"The Establishment Clause prevents the enactment of laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion.'" *New Yorkers for Religious Liberty*, 125 F.4th at 330 (quoting *Agostini v. Felton*, 521 U.S. 203, 222–23 (1997)). "Laws that 'grant[] a denominational preference' by preferring one religion over another violate the Establishment Clause, too." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244–46 (1982)). Plaintiff makes the conclusory allegation that Defendants "adopt[ed] a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion," AC ¶ 20, without any further elaboration or support. Plaintiff thus fails to state an Establishment Clause claim. *See Lynch v. Dep't of Educ. of City of New York*, 822 F. Supp. 3d 258, 278 (E.D.N.Y 2026) ("[T]o the extent the Complaint raises a facial Establishment Clause challenge, binding authority warrants its dismissal.").

Plaintiff's Free Exercise and Establishment Clause claims are therefore dismissed.

C. *Fourteenth Amendment*[7]

i. Procedural Due Process

Plaintiff alleges that she was "removed" from her job "unfairly and without due process." AC ¶ 48. The Court liberally construes this, and other passing references to Fourteenth Amendment procedural due process violations, as alleging such a claim. "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [a court] must first identify the property interest involved. Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *Hurley*, 2025 WL 2711471, at *10 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). Despite "at will employees possess[ing] no protectable property interest in continued employment," *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 608 (2d Cir. 1983), Defendants do not contest whether Plaintiff had a property interest, but rather argue that Plaintiff "received more than adequate due process before her exception request was denied and DOE terminated her employment," Mem. at 37.

"Procedures provide constitutional due process where there is 'a pre[-]termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985)). "[T]he Constitution mandates only that such process include, at a minimum, notice and

[7] Plaintiff also asserts that she is bringing Fifth Amendment equal protection and substantive due process claims, *see* AC ¶¶ 68–71, but those claims are dismissed because they may only be brought against federal actors, *see Skelly v. I.N.S.*, 168 F.3d 88, 91 (2d Cir. 1999) ("[T]here is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government."); *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 357 n.8 (E.D.N.Y. 2016) (Fifth Amendment due process clause constrains only actions of federal government); *see also Gyadu v. Bainer*, No. 19-cv-01120, 2021 WL 2073919, at *3 n.2 (D. Conn. May 24, 2021) (dismissing Fifth Amendment equal protection and substantive due process claims where complaint made no mention of federal officials).

the opportunity to respond." *O'Connor*, 426 F.3d at 198. Courts within the Second Circuit have found the Vaccine Mandate, the process by which DOE employees received advance notice of the Vaccine Mandate and of their ability to seek religious or medical exemptions and appeals, and their subsequent placement on leave without pay or termination, coupled with the availability of Article 78 proceedings as a post-deprivation remedy, did not violate procedural due process. *See, e.g.*, *Broecker*, 585 F. Supp. 3d at 313–14. Plaintiff's allegations clearly show that she received adequate due process: (1) DOE notified her of the Vaccine Mandate, AC ¶ 20; (2) she applied for and received a decision on her religious exemption, *id.* ¶¶ 23–24; (3) she was afforded a virtual appeal with an attorney, an official from the DOE, and a UFT representative (which was denied), *id.* ¶¶ 26–28; and (4) she applied "for fresh reconsideration of a religious exemption accommodation," during which Plaintiff received and answered questions pertaining to her religious beliefs, but her appeal was ultimately denied, *id.* ¶¶ 32–36. Only then was Plaintiff terminated from her position. *See id.* ¶ 37. Moreover, Plaintiff's "ability to request the exemption and appeal constituted an adequate pre-termination opportunity to respond, and her ability to pursue Article 78 remedies satisfied the post-termination administrative procedures as provided by state statute for her to have received due process." *Hurley*, 2025 WL 2711471, at *10; *see also Broecker*, 585 F. Supp. 3d at 314 ("Plaintiffs, having received multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York state court."). Plaintiff has given no indication as to whether she has sought relief through an Article 78 proceeding. *See Broecker*, 585 F. Supp. 3d at 314. Plaintiff thus received adequate due process, and her procedural due process claim is therefore dismissed.

The Court construes Plaintiff's allegations about the "problem code," *see, e.g.*, AC ¶¶ 31, 40, 51, 84, as a "stigma plus claim," *see Hurley*, 2025 WL 2711471, at *13 (in a "'stigma plus claim,' . . . a plaintiff can argue that she suffered 'injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'") (quoting *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006)). "A stigma plus claim has three elements: (1) injury to reputation; (2) the deprivation of a tangible interest or property right; and (3) a lack of adequate process." *Id.* "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Id.* (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). "The Second Circuit has also stated that '[t]o prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).

Plaintiff cannot succeed on this claim because she does not dispute the reasons for the issuance of the problem code: that she did not get the vaccination when it was mandated, and then refused to get vaccinated. *See, e.g.*, AC ¶¶ 27, 35, 54; ECF No. 16 at 30. Thus, the "problem code" designation was not false, which "is fatal to Plaintiff's stigma plus claim." *Hurley*, 2025 WL 2711471, at *14; *see also Vesterman v. New York City Dep't of Educ.*, No. 25-cv-2731, 2026 WL 1580250, at *2 (2d Cir. June 3, 2026) ("[Plaintiff]'s stigma-plus claim fails because she has not plausibly alleged that her problem code designation is anything other than an accurate reflection of her noncompliance with the Vaccine Mandate.").

Plaintiff's procedural due process claims are dismissed.

ii. Substantive Due Process

Plaintiff next brings a substantive due process claim, alleging that she "has a fundamental right to her sincere religious beliefs and to protect herself from bodily harm, and from her life/employment being taken by the government" for non-compelling and invalid reasons. AC ¶ 70.[8] Defendants argue that Plaintiff's claim must be dismissed because she fails to allege that the DOE infringed upon any fundamental right. *See* Mem. at 39. The Court agrees with Defendants, as does the Second Circuit. *See, e.g.*, *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) ("Both this Court and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional."). Plaintiff's substantive due process claim is thus dismissed.

iii. Equal Protection

Claiming an equal protection violation, Plaintiff asserts that "New York City was the only location in New York State which mandated the vaccine or termination for public employees" and that it "selectively enforc[ed] the mandate against unvaccinated City workers like Plaintiff." AC ¶¶ 62, 66. She cites a New York state court decision, *Garvey v. City of New*

---

8 In her Opposition, Plaintiff seems to allege a Fifth Amendment Takings Clause claim. *See* Opp. at 7. "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). Even assuming that Plaintiff's at-will employment is a property interest in the context of a takings claim, "this claim nevertheless fails, because the vaccine mandate [Plaintiff] challenge[s] did not interfere with that right." *Baker-Pacius v. Dep't of Educ. of the City of New York*, No. 25-cv-743, 2026 WL 693521, at *10 (E.D.N.Y. Mar. 12, 2026) (quoting *McCartney v. City of New York*, No. 23-cv-8232, 2025 WL 2711429, at *6 (E.D.N.Y. Sept. 23, 2025)). "The fact that Plaintiff[] chose not to receive the COVID-19 vaccine and as a consequence of that choice had [her] employment with the City terminated does not transform the City's mandate into a regulatory taking." *Id.* Plaintiff's Takings Clause claim is therefore dismissed.

*York*, 180 N.Y.S.3d 476, 480 (N.Y. Sup. Ct., Oct. 24, 2022), in which the court opined that New York City's Executive Order No. 62 improperly "exempted certain employees" from the Vaccine Mandate. *See id.* ¶ 61. Among these exempted employees were "various members of sports teams, athletes, performing artists and others" who were permitted "to remain unvaccinated and still do their work." *Id.* ¶ 38. Defendants assert that Plaintiff's equal protection claim fails because she does not plausibly allege "that DOE provided selective treatment to any similarly situated individuals of a different religion" or "that she was subjected to differential treatment as compared to individuals who requested an exemption based on different religious beliefs" (*i.e.*, a comparator). Mem. at 34.

The Court construes Plaintiff's claim as a selective enforcement claim. *See Hurley*, 2025 WL 2711471, at *8; AC ¶ 66. To state a selective enforcement claim, Plaintiff must allege a comparator. *See id.* (describing two forms of selective enforcement claims, both of which require a "degree of similarity between a plaintiff and a comparator"). Plaintiff fails to do so, instead arguing that it is not suitable for resolution at this stage. *See* Opp. at 28–29 (citing *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)). However, the Court may "grant [a] motion[] to dismiss where the complaint fail[s] to proffer sufficient facts regarding comparators to plausibly support the contention the comparators were similarly situated to the plaintiff." *Minto v. Molloy Coll.*, No. 16-cv-276, 2019 WL 4696287, at *9 (E.D.N.Y. Sept. 26, 2019). "To the extent Plaintiff argues that athletes, performers, and other artists are comparators, they are not materially similar to satisfy the comparator requirement." *Hurley*, 2025 WL 2711471, at *9. Next, Plaintiff's references generally to "similarly situated employees," *see, e.g.*, AC ¶ 60, are insufficient. *See Rogers v. Roosevelt Union Free Sch. Dist.*, No. 09-cv-3862, 2012 WL 6163130, at *9 n.13 (E.D.N.Y. Dec. 7, 2012) ("[G]eneral allegations of similarly situated individuals are

insufficient to establish that the individuals referenced are similarly situated in all material respects." (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003))).

Plaintiff's equal protection claim is therefore dismissed.

**II. State and City Claims**

Although district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). "[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)).

Having dismissed all of the federal claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims: violations of the NYSHRL, the NYCHRL, the New York City Administrative Code, and New York City Civil Service Laws. *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a surer-footed reading of applicable law.").[9] Since this case has progressed only to the motion to dismiss stage without the parties conducting any discovery, applying the normal presumption against supplemental jurisdiction is

---

[9] Because the Court dismisses all federal claims and declines to exercise supplemental jurisdiction over state claims, the Court need not address the purported procedural deficiencies of the state claims. *See* 28 U.S.C. § 1367(c)(3); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021).

appropriate. *See Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) ("find[ing] no abuse of discretion" in declining supplemental jurisdiction at motion to dismiss stage).

**III. Leave to Amend**

"A court should freely give leave [to amend] when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023) (affirming denial of leave to amend). When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, an opportunity to amend is not required where, as here, "[t]he problem with [Plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* Thus, where "granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, the Court finds that leave to amend is unwarranted for two reasons. First, the deficiencies in Plaintiff's claims cannot be cured by amendment because, among other reasons, Plaintiff was unqualified for her position due to her non-compliance with the Vaccine Mandate; she pleads effect before cause with respect to her retaliation claim; the DOE determined that her requested accommodation would create undue hardship on the DOE; she received adequate process before being terminated on the DOE; and she had no fundamental right infringed upon. *See Cuoco*, 222 F.3d at 112. Second, Plaintiff has already amended the Complaint once, and because the Court considered allegations raised in the Opposition as if they were included in the formal pleadings, Plaintiff has effectively already been given a second opportunity to amend her

complaint. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022). Moreover, Plaintiff does not request further leave to amend and "provides no explanation about how she intends to amend further her Amended Complaint to provide additional facts." *Pierre v. N.Y.C. Fire Dep't*, No. 22-cv-7425, 2024 WL 360662, at *4 (E.D.N.Y. Jan. 31, 2024). And "no court can be said to have erred in failing to grant a request that was not made." *Hirsch v. Butterman*, No. 22-cv-5064, 2025 WL 2145837, at *4 (E.D.N.Y. July 29, 2025) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)). Thus, the Court denies leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss, ECF No. 21, and DISMISSES Plaintiff's Amended Complaint, ECF No. 15, in its entirety. Plaintiff's federal claims are dismissed with prejudice pursuant to Rule 12(b)(6). The Court declines to exercise subject matter jurisdiction over Plaintiff's state and city law claims and dismisses those without prejudice. Because the Court concludes that Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6), the Court does not reach Defendants' additional arguments for dismissal under Rule 12(b)(5).

Although Plaintiff paid the filing fee, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment

consistent with this Order, close this case, mail a copy of this Order to *pro se* Plaintiff, and note the mailing on the docket.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 12, 2026