*** Filed ***
06:32 PM, 09 Sep, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____________________________________________x

**WENDY TRUDO**

**Plaintiff** **DOCKET NO. 25-CV-01345 (HG) (LKE)**

**-against-** **MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60B**

**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS, Chancellor; and KATHERINE RODI, Director of Employee Relations,**

**Defendants**
_____________________________________________x

*While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).*

## PRELIMINARY STATEMENT

Pro Se PLAINTIFF WENDY TRUDO ("Plaintiff") files this MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60B ("Motion") to request that the Judgment filed in this case on August 13, 2026 be vacated, the case reopened, and she be granted her request to submit a Second Amended Complaint ("SAC") due to: the mistakes, inadvertence and excusable neglect of the Judge; newly discovered evidence that with reasonable diligence could not have been discovered by Plaintiff; fraud, misrepresentation and misconduct by Defendants; applying the

Judgment prospectively is no longer equitable; and Plaintiff deserves to get relief from the unjustified deprivation of Constitutional rights deliberately caused by the opposing parties and the Judgment cited herein. At all times relevant to this matter, Plaintiff complained about the implementation of the COVID Vaccine Mandate ("CVM") by the New York City Department of Education and other Defendants *as-applied* to her, and not the COVID vaccine itself. Additionally, at no time were the COVID vaccines encased in law, fully approved for general use, or made a condition of employment.

All of the Plaintiff's requests for RA, her wrongful termination, and pleadings on the law are assumed known from the Amended Complaint and her Opposition to Defendants' Motion To Dismiss on the Docket which were submitted in a timely fashion to the Court, (November 3, 2025 Amended Complaint Docket #15; Exhibits 1-12 Docket #16, Nov 2, 2025; Plaintiff's Opposition, Docket #25, January 19, 2026) so they need not be re-argued here. Plaintiff requests that this Court incorporate all claims and arguments made by Plaintiff in her previously filed papers in this Motion by reference made herein.

Plaintiff requests that this Court relieve her from the Judgment which includes (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence...; (3) fraud..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.'" *Ulanov v. New York State Bd. of Elections*, No. 22-CV-193, 2022 WL 767865, at *1 (E.D.N.Y. Mar. 14, 2022) (quoting Fed. R. Civ. P. 60(b)).

In addition to the above, Plaintiff requests that this Court reopen this case so that Plaintiff may file a Second Amended Complaint which includes newly discovered evidence which alters the landscape of constitutional rights denied here, and bring forth the following: (1) the intentional misuse of public office by the City of New York under color of law to sway arbitrators and Judges to deny all religious accommodation requests, in direct violation of Constitutional rights (suggesting a Monell claim, EXHIBIT A); and (2) COVID vaccines were designated as Emergency Use Authorization ("EUA") *only* at all relevant times to the claims made by Plaintiff (EXHIBIT B). Plaintiff was deprived of her First Amendment rights, religious accommodation ("RA") and due process, because Defendants hid the fact that they never had the lawful right to force her to get vaccinated with the COVID vaccines under EUA Federal guidelines.

**JUDGMENT IS INEQUITABLE WHERE DEFENDANTS SECURED IT THROUGH FALSE ASSERTIONS AND CONCEALMENT OF MATERIAL FACTS**

The judgment in this case (entered on the Docket on August 13, 2026) is based upon a Memorandum and Order of Judge Hector Gonzalez ("Order") which stated multiple errors of law and outrageous mistakes that clearly were made without consideration of Plaintiff's claims:

Here, the Court finds that leave to amend is unwarranted for two reasons. First, the deficiencies in Plaintiff's claims cannot be cured by amendment because, among other reasons, Plaintiff was unqualified for her position due to her non-compliance with the Vaccine Mandate; she pleads effect before cause with respect to her retaliation claim; the DOE determined that her requested accommodation would create undue hardship on the DOE; she received adequate process before being terminated on the DOE; and she had no fundamental right infringed upon. See Cuoco, 222 F.3d at 112. Second, Plaintiff has already amended the Complaint once, and because the Court considered allegations raised in the Opposition as if they were included in the formal pleadings, Plaintiff has effectively already been given a second opportunity to amend" Order, p. 23

These errors and the newly discovered information attached to this Motion in EXHIBITS A,B make the judgment null and void and no longer equitable. Plaintiff should be granted her request to file a Second Amended Complaint.

Plaintiff's Amended Complaint detailed her requests for a religious accommodation (RA) instead of getting vaccinated as per the Order of the former Commissioner of the DOH (Ex. 3, AC; "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."). Yet Plaintiff's RA was denied by Defendants without any supporting documentation on why she was denied, or what "undue burden" Defendants were writing about. This Court agreed with Defendants in spite of a lack of evidence proving what they wrote was true. It was not. Plaintiff attached exhibits proving each of her causes of action. She submitted twelve (12) Exhibits in her AC and six (6) in her Opposition to Defendants' Motion To Dismiss. Yet the Judge concluded that nothing she wrote was relevant or true, and her case was dismissed without discovery.

This Court's decision is an outlier in current jurisprudence in this Court. See Magistrate Judge Marutollo's R&R in the case of Lynch v the Department of Education of the City of New York, et al., 24-cv-7795, December 26, 2025 ("the undersigned respectfully recommends that the Court deny Defendants' motion to dismiss with respect to Plaintiff's as-applied First Amendment Free Exercise Clause and Establishment Clause claims as well as her Section 1983 failure to reasonably accommodate her sincerely held religious beliefs claim under the First Amendment"); Hill v The Department of Education of the City of New York,24-cv-03506, Order dated 3/20/25, "Defendant's motion to dismiss is denied as to plaintiff's failure-to-accommodate claim". Here, the Defendants and the Judge considered discovery inconvenient. Judge Gonzalez acted as an

Arbitrator and not as a Judge. Plaintiff argues that she was deprived of her right to be heard on her Constitutional right to hold religious beliefs while competently performing her duties required by her employment; see New Yorkers For Religious Liberty, Inc. et al., v The City of New York et al., 22-cv-00752-DG-CHK, Report & Recommendation, July 31, 2026, Magistrate Kaminsky:"I recommend that [Plaintiffs] be granted leave to add Adjoua Kouame, Brian Smith, and Mildred Jurado as Plaintiffs and to include in their Complaint as-applied Free Exercise Clause claims; claims under the Equal Protection Clause, Title VII, the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"); and claims for municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)."

In her Amended Complaint, Plaintiff presented an *as-applied* challenge to the CVM. Her pleadings were inconvenient to this Court, and ignored. At all relevant times herein, Defendants the NYC Department of Education, Melissa Aviles-Ramos Chancellor, and Katherine Rodi, Director of Employee Relations, developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and or customs exhibiting deliberate indifference to the constitutional rights of Plaintiff as they applied the COVID Vaccine Mandate "CVM" to her in 2021-2022, with continuing damages until today.

Plaintiff argues that she was given no meaningful pre- or post-deprivation remedy and no offer of any accommodation. Her request for RA was never heard by anyone. Martin Scheinman's accommodations process, which we now know was tainted by the City (Ex. A), his Award, and LWOP were all thrown out as unconstitutional in November 2021. (Ex. 7, AC).

The next forum supposedly aligned with Title VII and Human Rights Laws that had the job of deciding RAs was the Citywide Panel, which also violated their required mandate to follow Federal Law and statutes. No applicant – including Plaintiff – appeared in person before this group to present their sincere religious beliefs that prohibited them from getting vaccinated by the COVID vaccine. As there were no hearings in person or by zoom, the Panel members decided on whether or not to accommodate anyone on the strength of their perceptions of truth in the statements submitted. This is not a standard that can stand under strict scrutiny, especially now that the emails in EXHIBIT A show animus against religious accommodations.

Eric Eichenholtz, the creator of the Panel and a powerful lawyer in the New York City Law Department, admitted to not going along with Title VII, and denying the requests for RAs as "undue burden" or "undue hardship" without any further details (in violation of the new standard set by Groff v. DeJoy, 600 U.S. 447 (2023); ("Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantially increased costs in relation to the conduct of its particular business.")).

Determinations stating "undue burden", "undue hardship", and "do not meet the criteria" were meaningless, but their use by the Citywide Panel was the only way to pass muster in front of arbitrators and Judges, as seen here. (See Ex. 9, AC). Also, the denial added that applicants had **three days** to get vaccinated or **seven days to extend the LWOP, and sign away the right to sue the DOE.** If the DOE employee did not comply, he/she was terminated. This is, says the Notice, DOE "policy", which is a total lie. There was no such policy.

This Court bought the bait, and accepted the Defendants' "undue burden" as valid, without any request for underlying facts. Basically, the DOE was not truthful to this Court, but Plaintiff did

not have the burden of proof, Defendants did. They should have submitted information about the iZone remote schools, reassignment/"rubber rooms, and a cohort of reassigned/excessed staff waiting for assignments called "Absent Teacher Reserve" or ATRs. Additionally, Telehealth and Google classrooms are plentiful throughout the City. The DOE also had rented spaces throughout New York City where DOE employees granted RAs were assigned:

> **City has unvaccinated educators doing remote learning now from the former St. Brigid School,** March 2022
> https://evgrieve.com/2022/03/city-has-unvaccinated-educators-doing.html

The Principal at St. Brigids, an AP whose RA was approved, said that there were seats for 90 approved remote DOE employees in the building, but less than a third of these seats were filled. In this Court at this time, to deny Plaintiff discovery on what the "undue burden" meant is an error that can be remedied with the filing of a SAC which includes Ex. A. Plaintiff argues that the emails in Ex. A show a malicious motive behind the actions of Defendants, and solves the problem handed down in the Order of Judge Gonzalez, p. 10:

"In cases alleging religious discrimination based on disparate treatment, a plaintiff may plausibly plead facts that give rise to an inference of unlawful discrimination where the plaintiff alleges that they 'actually require[] an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in [its] decision.'" *Hurley*, 2025 WL 2711471, at *4 (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015)). Plaintiff has not alleged any facts that show "her discharge was motivated by discriminatory intent" or that Defendants' "desire to avoid providing an accommodation was a motivating factor in its decision to terminate her."

The DOE is well-known for setting up the reassignment rooms in all boroughs. Their nickname "rubber rooms" was possibly a misnomer due to the fact that no one was in a straightjacket, and all employees were given their full salaries and benefits, some for 7-10 years. Nonetheless, it was not Plaintiff's burden to prove. Judge Gonzalez chose to believe that the Defendants suffered an

undue hardship if they granted Plaintiff's RA. He agreed that there was an undue hardship because Defendants said so. However, not asking for proof of such "hardship" was an error that must be fixed with a SAC and discovery. Judge Gonzalez wrote on p. 10:

'To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim' based on a failure to accommodate 'must plausibly allege that (1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she] [was] disciplined for failure to comply with the conflicting employment requirement.'" *Hurley*, 2025 WL 2711471, at *5 (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-cv-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)). However, a plaintiff's claim fails if the defendant shows "that the prospective accommodation would cause the employer to suffer an undue hardship." *Id.*

Plaintiff respectfully requests that Judge Gonzalez grant her request for a SAC due to this error of judgment. Defendants concealed any information in order to pursue terminating Plaintiff and other DOE employees by fiat, not by law. Defendants' fraudulent concealment of their actions to deprive Plaintiff of her constitutional rights and her employment should be given strict scrutiny. Plaintiff should be given the relief she seeks, namely leave to file a Second Amended Complaint and/or her backpay for her lost income.

An example of Judge Gonzelez accepting whatever the Defendants submitted can be seen in his inference in his Order, p. 8 that neither the DOE Chancellor nor Katherine Rodi were properly served. At all times, this was a lie created out of whole cloth by Defendants, who had no arguments or excuses to make about Defendants Rodi and Aviles-Ramos putting the Problem Code on Plaintiff's personnel file, or Rodi's denials of all requests for RAs without review as Executive Director of the very secret DOE "General Committee". (¶13, p. 4, AC; pp.19, 22, 23-27, Opposition). This action coding Plaintiff's file with a Problem Code, was done in total secrecy on or about October 4, 2021. Plaintiff was permanently given a database label of

"misconduct" which permanently blocked her from getting paid her salary - before she could appeal the denial of her RA request to the Citywide Panel.

Defendants, to save face to this Court and cover up their lack of supporting evidence for these lawless actions by Aviles-Ramos and Rodi, made up a total lie, that Katherine Rodi and Melissa Aviles-Ramos were not properly served – when the docket itself proved that they were. See Plaintiff's Opposition paper, **EXHIBIT 16**, Affidavit of Betsy Combier; and **EXHIBIT 17**, Letter to Magistrate Judge Merkl, case of Trabacchi v Department of Education of the City of New York, et al., 24-cv-06123. Plaintiff wrote about it in her Opposition pp. 19, 22, 23, and 27. See also the post on Advocatz.com with the full transcript of Ms. Rodi's Deposition in March 2025 where she testified that all submissions in September-November 2021 to the DOE's Solas email were denied outright *without review:*

**"The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/
(p. 19, Plaintiff's Opposition)

This Court did not disapprove of the lie made by Defendants on this issue, (Rodi's denial of all RAs without review) and therefore gave the lie silent approval. This was an error, and led to Plaintiff's deprivation of her constitutional right to be heard on her sincere religious beliefs. Both Scheinman's arbitration and the Citywide Panel were *appellate* forums, and did not hear the arguments made by Plaintiff or any other applicant *de nuovo.* Thus Rodi's denial of Plaintiff's RA without review stood as the law of this case all the way through the final determination at the Citywide Panel.

The Order also improperly cites COVID-19 Vaccination as a condition of employment, and compares Plaintiff's employment to that of medical personnel in a hospital:

"The COVID-19 vaccine mandate was "a lawful condition of employment." *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 316 (E.D.N.Y. 2022), *aff'd*, No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023). Thus, once the mandate went into effect and Plaintiff refused to get the vaccine, she was no longer qualified for her position. *See Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) ("District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim."); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023) ("[T]o be qualified for her position as a Teaching and Research Center Nurse 2, Plaintiff must have been vaccinated against COVID-19 or received a medical exemption; it is undisputed that she did neither."). Plaintiff's claim thus fails to meet the second element."

Yet Judge Gonzalez denied Plaintiff's equal protection claim because he compared her employment to employees who did not work for the DOE:

"To the extent Plaintiff argues that athletes, performers, and other artists are comparators, they are not materially similar to satisfy the comparator requirement." (Order, p.21)

In his Order, Judge Gonzalez validates a "change in her condition of employment" such that she was required to get vaccinated in order to work like nurses and doctors in hospitals. This makes no sense. Without reading the employment contract for hospital nurses and doctors, it is common sense to require vaccination for all diseases before someone is gainfully employed in a medical facility. Not so for teachers and other staff in the DOE. At no time did the UFT contract ("CBA") include any clause concerning vaccination of any kind. This never changed. Plaintiff's condition and terms of employment were never changed, and Defendants simply made that up to get DOE employees terminated (also not in the contract).

Civil Service Law 75-B forbids any worker to be terminated without a full and fair hearing. Plaintiff never received a meaningful hearing before or after she was terminated.

The fact of this matter is, there was no change at any time to Plaintiff's condition and terms of employment in Plaintiff's Collective Bargaining Agreement, and no change occurred to the constitutional laws governing her employment, namely her rights to the First Amendment, Free Exercise Clause, Section 1983 and due process. See Garvey v City of New York, Appellate Division Case No. 2022-08715, Dina Kolker, Order to Show Cause pp. 4-7. DOE policy, and the Mandate itself, permit exemption from vaccination on medical and religious grounds. Thus COVID-19 Vaccine Mandate is *not* a condition of employment.

A Plaintiff can seek redress through Section 1983 if "the Plaintiff asserts the violation of a federal right, not merely a violation of Federal Law." Blessing v. Freestone, 520 U.S. 329, 340(1997.) In Garvey v City of NY Index no. 85163/2022, Judge Ralph Porzio wrote in his decision:

"There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021…Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees."

In the Matter of New York State Unified Court System v. New York State Public Employment Relations Board (Index No. 161972/23, Appellate Division, First Department, Case No. 2024-04036), the court entered a Decision and Order on February 10, 2026 wherein the Appellate Division affirmed PERB's determination that the Unified Court System violated the Taylor Law by failing to bargain over the procedures used to implement its COVID-19 testing and

vaccination policies. Additionally, the court upheld PERB's remedy requiring that affected bargaining-unit employees be made whole for any resulting loss of pay and benefits.

This case highlights key legal principles regarding employer rights and negotiation procedures, namely: Background — The New York State Unified Court System implemented COVID-19 policies that included testing and vaccination requirements; Legal Challenge — PERB contested the court system's policies, arguing that they required negotiation over procedures; Court's Ruling — The court upheld PERB's decision but modified the remedy proposed by the Administrative Law Judge; Negotiation Requirement — Even if an employer has the right to make certain decisions, they must negotiate the procedures to implement those decisions.

“As a threshold matter, Supreme Court appropriately applied the arbitrary and capricious standard, as UCS challenges only PERB's " 'interpretation or application of a statute or regulation' " (Matter of Union of Auto. Technicians, AFL-CIO Local 563 v Port Auth. Empl. Relations Panel, 192 AD3d 445, 446 [1st Dept 2021], quoting Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239 [1997]; see also Matter of County of Nassau [Nassau Community Coll.] v New York State Pub. Empl. Relations Bd., 76 NY2d 579, 582, 585-586 [1990]).

In any event, under either the arbitrary and capricious or substantial evidence standard (CPLR 7803 [3], [4]), PERB rationally found, based on the record before it, that UCS's procedure implementing its decision to require employees to be tested weekly for COVID-19 and, later, to be vaccinated, was not excluded from mandatory bargaining with respondent unions. Even if an employer has the undisputed right to make a particular decision that is "not a subject of mandatory negotiation, the [employer] must negotiate the procedures necessary to effectuate that right" (Matter of City of Long Beach v New York State Pub. Empl. Relations Bd., 39 NY3d 17, 26 [2022]; Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d 73 [2000]). Here, UCS's undisputed right to require testing and vaccinations was not so "inextricably intertwined" with the procedures that UCS implemented for such testing and vaccination as to make bargaining over the procedures impracticable (see Matter of Nassau County Police Benevolent Assn. [County of Nassau (Nassau County Police Dept.)], 27 PERB ¶ 3054 [1994]).

"As the agency charged with implementing the fundamental policies of the Taylor Law, PERB is presumed to have developed an expertise and judgment that requires [courts] to accept its decisions with respect to matters within its competence" (Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd., 21 NY3d 255, 265 [2013] [internal quotation marks and brackets omitted]). Moreover, the challenged remedy directing the UCS to make

bargaining unit members whole for any "loss of pay and/or benefits" suffered was authorized by statute (Civil Service Law § 205 [5] [d]) and applied reasonably under the circumstances (see Matter of Town of Islip v New York State Pub. Empl. Relations Bd., 23 NY3d 482, 494 [2014])."

The erroneous statement made by Judge Gonzalez in his order dismissing Plaintiff's case cannot stand as the law of this case: "The COVID-19 vaccine mandate was "a lawful condition of employment." ...Thus, once the mandate went into effect and Plaintiff refused to get the vaccine, she was no longer qualified for her position." (citation omitted). Plaintiff was qualified as an excellent, permanent Occupational Therapist for the NYC DOE at all times relevant to the claims submitted herein. She was, therefore, protected under the Federal laws and statutes cited here, and should receive all remedies for the unlawful harm imposed on her.

**THE COVID VACCINES WERE AT ALL TIMES DESIGNATED EMERGENCY USE AUTHORIZATION ONLY, PROTECTING PLAINTIFF'S RIGHT TO INFORMED CONSENT**

One of the principal subjects of the proposed Second Amended Complaint will be the regulatory status of the COVID-19 vaccines that the DOE mandated its employees to receive. This is not a technical or peripheral legal argument. It goes to the heart of whether the DOE acted within the bounds of law in compelling Plaintiff and similarly situated employees to receive products that were, at the time of the mandate, authorized only under the Emergency Use Authorization regime created by Congress in 21 U.S.C. § 360bbb-3.

The Emergency Use Authorization statute was enacted by Congress precisely to address situations in which the exigencies of a public health emergency require the FDA to authorize the use of a medical product prior to the completion of the full approval process. Recognizing the necessarily experimental character of EUA products and the ethical imperatives arising from

their administration to the general public without the benefit of full clinical trial data review, Congress built into the EUA statute an explicit requirement of individual consent and a statutory right of refusal. Specifically, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) requires that individuals to whom an EUA product is offered must be informed of "the option to accept or refuse administration of the product." This is not mere regulatory language — it is a Congressional command reflecting the most fundamental principles of medical ethics and constitutional liberty: that no person shall be compelled to receive an unapproved medical product without meaningful choice. The EUA Fact Sheet issued by the FDA for the Pfizer-BioNTech COVID-19 Vaccine stated explicitly:

"It is your choice to receive or not receive [the vaccine]. Should you decide not to receive it, it will not change your standard medical care." No one in NYC saw this fact sheet, the DOE made sure of that. **EXHIBIT B**.

The constitutional right to refuse unwanted medical treatment is among the most fundamental liberty interests protected by the Fourteenth Amendment's Due Process Clause. The Supreme Court has recognized this right across a series of landmark decisions spanning more than half a century. In *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), the Court held that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment," a principle that represents the apex of a long common law tradition. In *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), the Court reaffirmed that substantive due process protects fundamental liberty interests that are "deeply rooted in this Nation's history and tradition" — and the right of bodily integrity and the right to refuse medical treatment squarely

satisfy that standard. As the Court observed in *Rochin v. California*, 342 U.S. 165 (1952), forcible bodily intrusion by the state shocks the conscience in a manner incompatible with the values of ordered liberty.

The compelled administration of an EUA product — one that Congress has specifically designated as requiring individual informed consent and a right of refusal — squarely implicates these constitutional protections. The DOE's mandate, which imposed the loss of livelihood, pension, and career as the consequence of exercising the statutory right of refusal, effectively transformed that right into a nullity. This conduct — compelling receipt of an experimental product by threatening termination — is not a reasonable exercise of governmental authority but an arbitrary deprivation of a constitutionally protected liberty interest that shocks the conscience within the meaning of *Rochin* and *Glucksberg*.

The FDA granted Emergency Use Authorization for the Pfizer-BioNTech COVID-19 Vaccine on December 11, 2020 (*see* 86 Fed. Reg. 5200, Jan. 19, 2021), and for the Moderna COVID-19 Vaccine on December 18, 2020. Both products were subject to EUA status — and therefore governed by the informed consent and right-of-refusal requirements of § 360bbb-3(e)(1)(A)(ii)(III) — at the time the DOE issued and enforced its Vaccine Mandate in September 2021. The DOE's mandate, which imposed severe employment consequences — including termination — upon employees who exercised the statutory right of refusal, directly conflicts with the congressional mandate embodied in 21 U.S.C. § 360bbb-3. By imposing those consequences, the DOE effectively nullified the statutory right of refusal, transforming what Congress designated as a choice into a compulsion. This is a matter of significant legal

consequence that the proposed Second Amended Complaint will address directly and specifically.

In federal court, the right to bodily integrity, encompassing the right to control one's body, is a complex issue with roots in both common law and constitutional protections, particularly the Fourteenth Amendment's due process clause. At no time did Defendants inform Plaintiff or anyone submitting medical or religious accommodation requests that the vaccines were Emergency Use Authorization (EUA). This is fraudulent concealment. For EUA use, federal law required individualized assessment, prohibited coercive conditions, and mandated informed consent. From 2021 to 2025 the COVID vaccines used in New York City were EUA only, according to the Federal Register. The forced mandate violated Plaintiff's right to refuse and informed consent pursuant to 21U.S.C §360bbb-3. Bodily integrity is the inviolability of the physical body and emphasizes the importance of personal autonomy, self-ownership, and self-determination of human beings over their own bodies. In the field of human rights, violation of the bodily integrity of another is regarded as an unethical infringement, intrusive, and possibly criminal.

Defendants ignored the mandatory ratification process and deprived Plaintiff her rights under statute and contract by never suggesting that she had a choice about whether or not she should get the vaccine. She was told to "get the jab or lose your job", no matter what your religious beliefs are. The DOE denied her any accommodation, offered her no discussion, and terminated her, with a Problem Code. This is indefensible as a matter of law.

The U.S. Supreme Court has repeatedly held that there is a right to be free from unjustified

intrusions on personal bodily integrity, suggesting that such a right is protected by the due process clause of the Fourteenth Amendment. These include unsolicited medical procedures. Union pacific Ry. Co. v Botsford, 41 U.S. 250 (1891); Cruzan ex rel. Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 312 (1990) ("Thus, the State's general interest in life must accede to Nancy Cruzan's particularized and intense interest in self-determination in her choice of medical treatment. There is simply nothing legitimately within the State's purview to be gained by superseding her decision.")

In NYC 2020- 2021, the UFT hid from membership that they paused all grievances concerning the forced leave without pay and denial process for requests of accommodations. These actions violated the Taylor Law, exactly as the summary terminations did. See Matter of New York State Unified Court System v New York State Public Employment Relations Board, 2026 NY slip Op 00621; Decided February 10, 2026 by the Appellate Division, First Department ("PERB rationally found, based on the record before it, that UCS's procedure implementing its decision to require employees to be tested weekly for COVID-19 and, later, to be vaccinated, was not excluded from mandatory bargaining with respondent unions.")

Even if an employer has the undisputed right to make a particular decision that is "not a subject of mandatory negotiation, the [employer] must negotiate the procedures necessary to effectuate that right" (Matter of City of Long Beach v New York State Pub. Empl. Relations Bd., 39 NY3d 17, 26 [2022]; Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd, 95 NY2d 73 [2000])). Plaintiff now seeks leave to file a Second Amended Complaint, which would add particularized factual allegations concerning the EUA regulatory status of the COVID-19

vaccines available at the time the Vaccine Mandate took effect, including the legal distinction between the EUA-labeled Pfizer-BioNTech vaccine and the "Comirnaty" product, as well as the statutory right of refusal codified at 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Here, Plaintiff's rights were intentionally never considered.

## THE PROPOSED MONELL ALLEGATIONS STATE A VIABLE MUNICIPAL LIABILITY CLAIM

Plaintiff was recently sent a series of emails involving several City officials and the former Commissioner of the Department of Health, Dr. David Chokshi. These emails, attached here as **EXHIBIT A**, show the focus of this group was to help arbitrators deny the appeals made to them by unvaccinated employees of the City of New York who refused the COVID vaccine due to their beliefs against the use of fetal cells, and/or their Pope or religious leader opposed abortion. The substance of their discussion was the convincing of the arbitrators to deny all requests for accommodation/exemption proceeding to be heard under Martin Scheinman, President of the Scheinman Arbitration and Mediation Services Inc. ("SAMS"). Plaintiff's request and her litigation here for a religious accommodation/exemption are directly relevant to the content of these emails. .Below is a quote from Steve Banks, general Counsel of the Office of Labor Relations (the Office that holds administrative hearings for the DOE).:

"Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development,

and/or actual formula for the COVID vaccines.
Since many of these cases are going to labor arbitrators, there is a need for factual information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS. The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not consistent with the science of the virus. In some areas, there may be a distinction between the 3 brands of vaccine and I think as long as one is available the claim should also be denied.
Is this something you guys could pull together by late morning tomorrow?
Thanks,

Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238"

Please note that the email uses the term "exemption", and the purpose is to create a foolproof way to deny all requests for exemptions/accommodations brought before the labor arbitrators who worked for Martin Scheinman and his Company. The memo created by the people in these emails are directly attacking medical and religious beliefs in order to deny accommodations. What is most shocking is the collaboration of DOH Commissioner David Chokshi, City government and Steve Banks in the creation of a "UFT Accommodation Process" designed to

deliberately deny all appeals submitted to them. Subsequent appeals were denied by the Scheinman labor panels. This is a very corrupt policy.

"When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024).. The fact that there are no actions of the Citywide Panel that could be aligned with Title VII , Human Rights Law, and *Groff v Dejoy*, is troublesome, but not enough, it seems, for either Defendants or this Court to worry about or even pay attention to.

These emails support a predetermined anti-exemption approach. The strongest line is Steven Banks asking for a doctor-signed document to tell arbitrators why the soon-to-be fired appellants must be denied any claims about fetal cells (see "religious claims were "BS.""). The City was not neutrally evaluating accommodation requests, but was instead developing advocacy material to defeat Plaintiffs here and similarly situated in other cases.

The emails support a lack of neutrality toward medical need and religious beliefs. The emails focus on rebutting objections about fetal tissue and animal products, and even discuss asking employees whether they used medications tied to the same concerns. Thus the review process was not a sincere, individualized accommodation review, but an effort to discredit certain medical conditions and religious beliefs.

The emails support pretext. If the City says requests were fairly reviewed on an individualized basis, this email chain shows otherwise. The emails suggest that the senders were developing a

citywide strategy and memo for negotiations, hearings, and arbitrators before or during the process publicly promoted to potential appellants and dissenters to the COVID Vaccine Mandate (CVM).

The chain suggests decision-makers were examining the content and acceptability of medical and religious objections, rather than just sincerity or operational feasibility. The process was hostile or non-neutral as applied.

For the Second Amended Complaint and the record evidence, Plaintiff could use the many other specific facts currently available showing animus and double standards, such as City officials sending out guidance encouraging categorical denial of accommodations without review (Katherine Rodi testimony, 2025). In a SAC, Plaintiff would amplify and specify the *Monell* allegations against the DOE, including factual detail regarding the operation of the Citywide Panel, the Chancellor's role in directing or ratifying the blanket denial policy, and the statistical and documentary evidence of the policy's operation.

This Court should not have dismissed this case before discovery, considering the plethora of factual evidence Plaintiff  has submitted in support of her claims. At the pleading stage, the Court must accept Plaintiffs' factual allegations as true and draw all inferences in Plaintiffs' favor. *Ricciuti*, 941 F.2d at 123–24 (reversing lower court's dismissal and holding "a plaintiff is not required to prove his case at the pleading stage. Indeed, 'the pleading of evidence should be avoided.'").

The Judge's allegiance to the Defendants' claims against Plaintiff's arguments for accommodations was not based on fact or circumstance and was unfair to Plaintiff. Under § 1983, the CITY and DOE may be liable for unconstitutional actions taken by its employees

where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City]'s officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

To establish a municipal liability (or Monell) claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks omitted); Agosto, 982 F.3d at 97.

Governments can only be held responsible for the actions of their employees when "their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988). Therefore, a plaintiff must "demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto, 982F.3d at 98 (quoting Bd. of City Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137L. Ed. 2d 626 (1997)).

Plaintiff has stated sufficient facts to plead in a Second Amended Complaint a Monell claim, as her newly acquired evidence challenges an official municipal policy. Wray, 490 F.3d at 195. Plaintiff would argue in her SAC that Defendants misused their positions in City government and she would juxtapose the numerous allegations as to Defendants' actions regarding their termination process, and the policy and custom which they created in order to deny anyone an accommodation. Plaintiff has sufficiently alleged that the City and DOE are responsible for the Mandate itself, its' enforcement, and implementation. See Praprotnik, 485 U.S. at 122; Agosto, 982F.3d at 98-99.

Plaintiff has enough facts to establish a constitutional violation in the implementation of the CVM as-applied to her and to all DOE employees similarly situated. The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law. The false information in Defendants' papers concerning LWOP and the total lack of any criteria for obtaining a medical accommodation yet selectively approving some applicants but not others, shows a policy and custom of pretextual discrimination. This can give rise to an inference that the employer is dissembling to cover up an ulterior purpose. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147 (2000); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may … suffice to show intentional discrimination."); *Stratton v. Dep't for the Aging for New York*, 132 F.3d 869, 880-81 (2d Cir. 1997) (holding that evidence of an employer's false explanation for employment action supported the jury's finding of unlawful pretext). In the criminal context, courts frequently refer to false exculpatory statements as evidence of consciousness of guilt. *See, e.g., United States v. Reyes*, 302 F.3d 48, 56 (2d Cir.2002) ("[I]t is reasonable to infer guilty knowledge from [the defendant's] false exculpatory statement."). These inferences are "consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves*, 530 U.S. at 147 (internal quotation marks omitted). This is a prima facie Monell claim, and Plaintiff wants to pursue this in a Second Amended Complaint.

**THE LIBERAL STANDARD OF RULE 15(A)(2) STRONGLY FAVORS GRANTING LEAVE TO AMEND**

Federal Rule of Civil Procedure 15(a)(2) provides, in relevant part, that when a party requires leave of court to amend its pleading, "the court should freely give leave when justice so requires." This is not merely a permissive standard — it is a mandate of liberality that reflects the strong federal policy in favor of resolving cases on their merits rather than on the technical sufficiency of initial pleadings. The rule reflects the understanding that the purpose of pleadings is to give fair notice of the claims asserted, and that justice is ill-served by rigidly confining parties to the four corners of their first or second attempt at a complaint.

The Supreme Court's seminal decision in *Foman v. Davis*, 371 U.S. 178 (1962), remains the lodestar for application of Rule 15(a)(2). In *Foman*, the Court instructed that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Id.* at 182. The Court identified a finite list of factors that may warrant denial of leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* Significantly, the Court emphasized that "[i]n the absence of any apparent or declared reason — such as" those listed — "the leave sought should, as the rules require, be 'freely given.'" *Id.* As set forth in Point V below, none of the *Foman* factors weigh against amendment in this case.

The Second Circuit has consistently applied *Foman*'s liberal standard. In *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008), the Second Circuit reaffirmed that "[t]he Second Circuit strongly favors permitting amendment," and that "[o]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse

of that discretion." *Id.* at 191 (internal quotation marks omitted). The court specifically cautioned that "district courts should not deny leave to amend simply because" the proposed amendment would add new legal theories, where those theories arise from the same core facts already in dispute. *Id.*

Similarly, in *Rachman Bag Co. v. Liberty Mutual Insurance Co.*, 46 F.3d 230 (2d Cir. 1995), the Second Circuit reversed the district court's denial of leave to amend, holding that outright refusal to grant leave to amend without any justifying reason constitutes an abuse of discretion. The court emphasized that the policy of the federal rules strongly favors granting leave to amend to allow parties to present their claims in full. *Id.* at 234. These principles apply with full force here. The proposed Second Amended Complaint does not represent a fundamental restructuring of Plaintiff's claims, but rather an amplification, clarification, and supplementation of existing allegations in light of legal authority and regulatory facts that have crystallized during the course of this litigation.

It is well established in this Circuit that the party opposing amendment bears the burden of demonstrating that prejudice will result. *See, e.g.*, *Ruotolo*, 514 F.3d at 191. Mere speculative or conclusory assertions of prejudice are insufficient; the opposing party must demonstrate that it will suffer "real" and "substantial" prejudice as a consequence of the amendment. *See Rachman Bag Co.*, 46 F.3d at 235. Inconvenience, the need to conduct additional discovery, or the theoretical possibility that the scope of the litigation might broaden do not, standing alone, constitute the "undue prejudice" that would justify denial of leave to amend under Rule 15(a)(2). Defendants cannot meet this burden here. The EUA regulatory facts referenced in the proposed Second Amended Complaint are a matter of public record, documented in FDA correspondence,

Federal Register publications, and publicly available EUA Fact Sheets. The *Monell* evidence regarding the Panel's operations is within the DOE's own custody and control. Defendants will not be required to locate or preserve evidence that they do not already possess.

There is no undue delay, bad faith, or unfair prejudice to Defendants that should lead this Court to deny Plaintiff's request to file a Second Amended Complaint.

**CONCLUSION**

This action arose from the New York City Department of Education's (hereinafter "DOE") constitutionally infirm enforcement of its COVID-19 vaccination mandate and its systematic, blanket denial of religious accommodation requests submitted by school-based employees during the 2021–2022 school year. The process used was a policy that discriminated within and outside of the many applicants. Defendants did nothing to stop the random chaos caused by the intentional harm – namely discrimination and retaliation - against Plaintiff, caused by their deceit, lies and innuendoes of alleged facts which held no substance in truth. This Court did not consider Plaintiff's arguments nor her Exhibits. The Judgment here reflects the acceptance of Defendants' deceit while at the same time shows disdain for pro se Plaintiff's arguments and evidence, all summarily discarded.

Plaintiff requests that this Court reopen her case and grant her request to file a Second Amended Complaint as a matter of justice. The Defendants are not prejudiced by this request.

Dated: September 8, 2026

/s/Wendy Trudo

CC: Craig A. Mungavin